[No. F026032. Fifth Dist. Feb. 25, 1998.]

THE PEOPLE, Plaintiff and Respondent, v.
EDWARD FUENTES, Defendant and Appellant.

**[Opinion certified for partial publication.*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts II, III, IV and V.

## COUNSEL

Bruce Laning for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Robert R. Anderson, Assistant Attorney General, Shirley A. Nelson and Wayne K. Strumpfer, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**ARDAIZ, P. J.**—Appellant Edward Fuentes was convicted, following a jury trial, of first degree murder (Pen. Code, § 187; count 1) and attempted robbery (Pen. Code, §§ 211, 664; count 2). As to each count, the jury found appellant was armed with a firearm during commission of the offense (Pen. Code, § 12022, subd. (a)(1)). Appellant was sentenced to 29 years to life in prison, and ordered to pay a $5,000 restitution fine and to be housed at the California Youth Authority (Welf. & Inst. Code, § 1731.5, subd. (c)). This timely appeal followed.

In the published portion of this opinion, we hold that admission of extrajudicial statements of coparticipants, pursuant to Evidence Code section 1230, did not deny appellant his rights under the confrontation clause of the Sixth Amendment to the United States Constitution. In the unpublished portion, we reject his remaining contentions.

### FACTS

On the night of November 4, 1995, appellant and his friends—Ricky Fernandez, Marco Reyna, Leng Vang, Keith Scott, Ray Alarcon, and Johnny De Leon—drove from Reyna's house in Merced to Planada. There, De Leon,

Alarcon, and Fernandez got out of the car and one of them (apparently Fernandez) shot Isabel Sotelo in an attempted robbery. Sotelo later died. As Fernandez was himself shot (presumably by Sotelo) badly enough to need medical treatment, the group then concocted a story about his being the victim of a drive-by shooting in Merced. Police later determined there had been no such shooting. Ultimately, law enforcement officers recovered both the car and the probable murder weapon, a rifle which bore Fernandez's palm print, from the home of Reyna's mother.

Reyna, who was granted immunity in return for his testimony, testified that the plan to rob someone was made by the group (all of whom were D.B.S. gang members) before they left the house to go to Planada.[1] Reyna said the rifle belonged to appellant, and that appellant was present during the discussion of the robbery. Reyna said appellant later told him that Fernandez was shot trying to rob Sotelo.

Appellant testified and admitted that he drove the car. However, he denied knowing what De Leon, Alarcon, and Fernandez were going to do when they got out of the vehicle. Appellant said he did not know anything about a robbery until detectives told him. Keith Scott, who also testified for the defense, similarly denied that there was any discussion or plan relating to a robbery. However, whereas appellant denied helping to make up the cover story about how Fernandez was shot, Scott testified that everyone made up that story together.

Sergeant Martin of the Merced Police Department, who testified as an expert on gangs, opined that the driver of the car (appellant) knew what was going to happen when the others got out of the vehicle.

### DISCUSSION

### I.

### *Admission of Extrajudicial Statements*

#### A. *Background*

At trial, Johnny De Leon, Ray Alarcon, and Ricky Fernandez (all of whom were charged with criminal offenses arising out of the Sotelo homicide) asserted their Fifth Amendment privilege against self-incrimination, and refused to testify. The prosecution then sought to have statements they made

---

[1] "D.B.S." stands for "Da Bomb Squad." Finding "Da Bomb Squad" to be unnecessarily inflammatory, the trial court ruled the gang would be referred to as "D.B.S."

to police admitted into evidence pursuant to Evidence Code section 1230 (declarations against interest).[2] Appellant objected, contending portions of the statements were self-serving and, because the declarants would not be available for cross-examination, admission of the statements would violate his Sixth Amendment rights to confront and cross-examine witnesses.

The trial court determined that De Leon, Alarcon, and Fernandez were unavailable as witnesses. It ruled that statements concerning what took place in Planada would be admitted; however, statements which were not against the declarant's penal interest (for instance, a statement by Alarcon that appellant loaded the rifle, but Alarcon was bored so he unloaded it and reloaded it) would be excluded as violative of appellant's Sixth Amendment rights. To that end, the court and counsel went through the transcripts of the tape-recorded statements to determine what evidence would be admitted. The trial court emphasized that it would not allow the prosecutor to place into evidence anything that incriminated appellant without defense counsel having an opportunity to cross-examine the declarant.

Over appellant's standing objection, the statements were admitted at trial through testimony by Detectives Perez and De Busk, who interviewed the three. De Leon told the detectives that he and Fernandez had confronted the people in Planada to rob them of their money. Alarcon related that he heard someone say "give me your money," but he did not know who said this. The plan was that Alarcon would hold a McDonald's cup in order to collect the money or jewelry.[3] Fernandez was supposed to keep the gun pointed at the victims, who were supposed to place their valuables in the cup. Alarcon related that De Leon had a small .22-caliber gun that he pointed at the victims, but it was on safety and there was only one bullet in it. There were 12 or 13 bullets in the rifle, which Alarcon said he had loaded. Fernandez told detectives that they were in Planada and saw two guys walking. The group went around the corner and Fernandez got out of the car with the rifle and demanded their money. De Leon had a handgun, and Alarcon had a cup to hold the money. Fernandez said he was the only one who did the shooting.

B. *Analysis*

█ We start with the proposition that the statements in question constituted hearsay and that, as a general rule, hearsay evidence is inadmissible.[4] The chief reasons for this general rule of inadmissibility are that the statements are not made under oath, the adverse party has no opportunity to

---

[2]Further statutory references are to the Evidence Code unless otherwise stated.

[3]A bloody plastic McDonald's cup was found at the scene of the shooting.

[4]Section 1200 provides in pertinent part: "(a) 'Hearsay evidence' is evidence of a statement that was made other than by a witness while testifying at the hearing and that is offered to

cross-examine the declarant, and the jury cannot observe the declarant's demeanor while making the statements. (1 Witkin, Cal. Evidence (3d ed. 1986) The Hearsay Rule, § 558, p. 533; see *Williamson* v. *United States* (1994) 512 U.S. 594, 598-599 [114 S.Ct. 2431, 2434-2435, 129 L.Ed.2d 476, 482] [discussing theory behind federal hearsay rule].)

Section 1230 codifies an exception to the general rule for declarations against interest. It provides: "Evidence of a statement by a declarant having sufficient knowledge of the subject is not made inadmissible by the hearsay rule if the declarant is unavailable as a witness and the statement, when made, was so far contrary to the declarant's pecuniary or proprietary interest, or so far subjected him to the risk of civil or criminal liability, or so far tended to render invalid a claim by him against another, or created such a risk of making him an object of hatred, ridicule, or social disgrace in the community, that a reasonable man in his position would not have made the statement unless he believed it to be true."

■ "When hearsay evidence is admitted it is usually because it has a high degree of trustworthiness. [Citations.] Thus, declarations against pecuniary or proprietary interest are admitted because they are unlikely to be false. [Citation.] A declaration against penal interest is no less trustworthy." (*People* v. *Spriggs* (1964) 60 Cal.2d 868, 874 [36 Cal.Rptr. 841, 389 P.2d 377].) In order to exclude untrustworthy statements, however, "[t]he statement must be so far contrary to the declarant's interests 'that a reasonable man in his position would not have made the statement unless he believed it to be true.' [Citations.]" (1 Witkin, Cal. Evidence, *supra*, The Hearsay Rule, § 691, p. 677; see *Williamson* v. *United States, supra,* 512 U.S. at pp. 598-599 [114 S.Ct. at pp. 2434-2435, 129 L.Ed.2d at p. 482] [discussing similar requirement in Fed. Rules Evid., rule 804(b)(3), 28 U.S.C.].) Moreover, the declarant must be unavailable as a witness (§ 1230; *People* v. *Smith* (1970) 13 Cal.App.3d 897, 902 [91 Cal.Rptr. 786, 52 A.L.R.3d 875]); the proponent of the evidence must use the in-court testimony of the declarant if possible (1 Witkin, Cal. Evidence, *supra*, The Hearsay Rule, § 690, p. 677).

■ Appellant concedes that De Leon, Alarcon, and Fernandez were unavailable as witnesses due to their refusals to testify. A declarant who asserts his or her Fifth Amendment privilege not to testify is "unavailable"

prove the truth of the matter stated. [¶] (b) Except as provided by law, hearsay evidence is inadmissible."

At one point during trial, the prosecutor claimed that he was offering the statements "for nonhearsay purpose to show how the crime was committed." Neither party has relied on this assertion on appeal, and it would be difficult to see how the statements could constitute evidence of how the crime was committed without being offered to prove the truth of their contents.

within the meaning of the statute. (*People* v. *Gordon* (1990) 50 Cal.3d 1223, 1251 [270 Cal.Rptr. 451, 792 P.2d 251]; *People* v. *Spriggs, supra,* 60 Cal.2d at p. 875, fn. 3; *People* v. *Lopez* (1980) 110 Cal.App.3d 1010, 1021 [168 Cal.Rptr. 378].) Appellant also correctly concedes that the statements—carefully limited as they were to statements which were specifically disserving to the interests of the declarants—constituted declarations against interest within the purview of section 1230. (*People* v. *Leach* (1975) 15 Cal.3d 419, 441 & fn. 17 [124 Cal.Rptr. 752, 541 P.2d 296]; see *Williamson* v. *United States, supra,* 512 U.S. at pp. 598-600 [114 S.Ct. at pp. 2434-2435, 129 L.Ed.2d at pp. 482-483] [Fed. Rules Evid., rule 804(b)(3), 28 U.S.C.].)

Given the foregoing, it is clear the trial court did not abuse its discretion in admitting the challenged statements pursuant to section 1230. (See *People* v. *Gordon, supra,* 50 Cal.3d at pp. 1250-1251 [applying abuse of discretion standard].) ■ Despite the fact the statements met the requirements of that statute, however, appellant contends his Sixth Amendment rights to confrontation and cross-examination were violated by their admission. In so arguing, appellant primarily relies on *Bruton* v. *United States* (1968) 391 U.S. 123 [88 S.Ct. 1620, 20 L.Ed.2d 476] and this court's opinion in *People* v. *Coble* (1976) 65 Cal.App.3d 187 [135 Cal.Rptr. 199].[5]

In *Bruton* v. *United States, supra,* 391 U.S. 123, a joint trial was held for Bruton and Evans at which Evans's confession, which implicated himself and Bruton, was admitted into evidence. Evans did not testify at trial. Under state evidentiary rules, Evans's confession was inadmissible hearsay as to Bruton, and the jury was instructed to that effect. (*Id.* at pp. 123-125 [88 S.Ct. at pp. 1621-1622].) The United States Supreme Court reversed Bruton's conviction, holding that ". . . because of the substantial risk that the jury, despite instructions to the contrary, looked to the incriminating extrajudicial statements in determining [Bruton's] guilt, admission of Evans' confession in this joint trial violated [Bruton's] right of cross-examination secured by the Confrontation Clause of the Sixth Amendment." (*Bruton, supra,* at p. 126 [88 S.Ct. at p. 1622].) The court stated: "[T]here are some contexts in which the risk that the jury will not, or cannot, follow

[5]Appellant also cites *People* v. *Aranda* (1965) 63 Cal.2d 518 [47 Cal.Rptr. 353, 407 P.2d 265], in which the California Supreme Court set out "judicially declared rules of practice" concerning the appropriate procedure when the prosecution seeks to introduce into evidence an extrajudicial statement of one defendant that implicates a codefendant. (*Id.* at pp. 530-531.) As appellant notes, however, the adoption by voters of article I, section 28, subdivision (d) of the California Constitution abrogated *Aranda* to the extent that case requires exclusion of relevant evidence which need not be excluded under federal constitutional law. (*People* v. *Fletcher* (1996) 13 Cal.4th 451, 465 [53 Cal.Rptr.2d 572, 917 P.2d 187]; *In re Jose M.* (1994) 21 Cal.App.4th 1470, 1479 [27 Cal.Rptr.2d 55]; *People* v. *Walkkein* (1993) 14 Cal.App.4th 1401, 1407 [18 Cal.Rptr.2d 383].)

instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored. [Citations.] Such a context is presented here, where the powerfully incriminating extrajudicial statements of a codefendant, who stands accused side-by-side with the defendant, are deliberately spread before the jury in a joint trial. Not only are the incriminations devastating to the defendant but their credibility is inevitably suspect, a fact recognized when accomplices do take the stand and the jury is instructed to weigh their testimony carefully given the recognized motivation to shift blame onto others. The unreliability of such evidence is intolerably compounded when the alleged accomplice, as here, does not testify and cannot be tested by cross-examination. It was against such threats to a fair trial that the Confrontation Clause was directed." (*Bruton, supra,* at pp. 135-136 [88 S.Ct. at pp. 1627-1628], fns. omitted.)

There are two major differences between the situation in *Bruton* and that in the present case. First, the statements admitted into evidence here did not directly inculpate appellant, but incriminated him only in the sense they showed that a robbery was intended. Appellant's involvement depended on unrelated evidence. Even where *Bruton* would otherwise apply, the lack of facial incrimination removes the evidence from *Bruton*'s restrictions and permits admission of such evidence with a proper limiting instruction. (*Richardson* v. *Marsh* (1987) 481 U.S. 200, 208, 211 [107 S.Ct. 1702, 1707-1708, 1709, 95 L.Ed.2d 176].) Second, as we have seen, the statements here were properly admitted under state rules of evidence, a situation not present in *Bruton*. In fact, in that case the United States Supreme Court took pains to "emphasize that the hearsay statement inculpating [Bruton] was clearly inadmissible against him under traditional rules of evidence . . . ." (*Bruton* v. *United States, supra,* 391 U.S. at p. 128, fn. 3 [88 S.Ct. at pp. 1623-1624].) The court noted that it did not have before it "any recognized exception to the hearsay rule" insofar as Bruton was concerned, and it was careful to note that it "intimate[d] no view whatever that such exceptions necessarily raise questions under the Confrontation Clause." (*Ibid.*) Indeed, *Bruton* is but a part of "the complex body of case law relating to the interplay of the confrontation clause with the hearsay rule[.]" (*U.S.* v. *York* (7th Cir. 1991) 933 F.2d 1343, 1362, cert. den. *sub nom. York* v. *United States* (1991) 502 U.S. 916 [112 S.Ct. 651, 116 L.Ed.2d 668].)

We must determine whether, despite these significant differences, admission of the evidence violated the confrontation clause.[6]

"The Confrontation Clause of the Sixth Amendment, extended against the States by the Fourteenth Amendment, guarantees the right of a criminal

---

[6]Perhaps the most obvious difference between this case, *Bruton*, and *Richardson* is that appellant was tried separately from his cohorts. We do not consider this difference to be

defendant 'to be confronted with the witnesses against him.' The right of confrontation includes the right to cross-examine witnesses." (*Richardson* v. *Marsh*, *supra*, 481 U.S. at p. 206 [107 S.Ct. at pp. 1706-1707].) Literally read, the language of the confrontation clause would require exclusion of any statement made by a declarant not present at trial. This would abrogate virtually every hearsay exception—a result long rejected by the United States Supreme Court as unintended and too extreme. (*Ohio* v. *Roberts* (1980) 448 U.S. 56, 63 [100 S.Ct. 2531, 2537-2538, 65 L.Ed.2d 597].) On the other hand, that court has also rejected the notion of absolute congruence between the confrontation clause and hearsay rules: "While it may readily be conceded that hearsay rules and the Confrontation Clause are generally designed to protect similar values, it is quite a different thing to suggest that the overlap is complete and that the Confrontation Clause is nothing more or less than a codification of the rules of hearsay and their exceptions as they existed historically at common law." (*California* v. *Green* (1970) 399 U.S. 149, 155 [90 S.Ct. 1930, 1933-1934, 26 L.Ed.2d 489].)

The United States Supreme Court has described the interplay between the two principles thus:

"The Confrontation Clause operates in two separate ways to restrict the range of admissible hearsay. First, in conformance with the Framers' preference for face-to-face accusation, the Sixth Amendment establishes a rule of necessity. In the usual case . . . , the prosecution must either produce, or demonstrate the unavailability of, the declarant whose statement it wishes to use against the defendant. [Citations.]

"The second aspect operates once a witness is shown to be unavailable. Reflecting its underlying purpose to augment accuracy in the factfinding process by ensuring the defendant an effective means to test adverse evidence, the Clause countenances only hearsay marked with such trustworthiness that 'there is no material departure from the reason of the general rule.' [Citation.] The principle recently was formulated in *Mancusi* v. *Stubbs* [(1972) 408 U.S. 204 [92 S.Ct. 2308, 33 L.Ed.2d 293]]: [¶] 'The focus of the Court's concern has been to insure that there "are indicia of reliability which have been widely viewed as determinative of whether a statement may be placed before the jury though there is no confrontation of the declarant," [citation], and to "afford the trier of fact a satisfactory basis for evaluating

crucial, however, since, in *Douglas* v. *Alabama* (1965) 380 U.S. 415 [85 S.Ct. 1074, 13 L.Ed.2d 934], the Supreme Court used similar principles to find a confrontation clause violation where the defendant was tried separately from the cohort whose confession was placed before the jury. Moreover, any confrontation clause problem that exists is not obviated by the tactic of separately charging coparticipants where, as here, the statement of one is proffered against another.

the truth of the prior statement," [citation]. It is clear from these statements, and from numerous prior decisions of this Court, that even though the witness be unavailable his prior testimony must bear some of the "indicia of reliability." ' [Citation.]

"The Court has applied this 'indicia of reliability' requirement principally by concluding that certain hearsay exceptions rest upon such solid foundations that admission of virtually any evidence within them comports with the 'substance of the constitutional protection.' [Citation.] This reflects the truism that 'hearsay rules and the Confrontation Clause are generally designed to protect similar values,' [citation], and 'stem from the same roots,' [citation]. It also responds to the need for certainty in the workaday world of conducting criminal trials.

"*In sum, when a hearsay declarant is not present for cross-examination at trial, the Confrontation Clause normally requires a showing that he is unavailable. Even then, his statement is admissible only if it bears adequate 'indicia of reliability.' Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception. In other cases, the evidence must be excluded, at least absent a showing of particularized guarantees of trustworthiness.*" (*Ohio* v. *Roberts, supra,* 448 U.S. at pp. 65-66 [100 S.Ct. at pp. 2538-2539], italics added, fns. omitted.)[7]

We hold that insofar as declarations against penal interest are concerned, the requirements of section 1230 (as interpreted in *People* v. *Leach, supra,* 15 Cal.3d at p. 441 & fn. 17) are identical to those of the confrontation clause. Since the statements at issue here were properly admitted under section 1230, we conclude there is no constitutional violation.[8]

In so holding, we need not determine whether section 1230, insofar as it concerns declarations against penal interest, codifies a firmly rooted hearsay objection. (See *People* v. *Spriggs, supra,* 60 Cal.2d at pp. 874-875 [establishing admissibility of declarations against penal interest as hearsay rule exception]; *People* v. *Wilson* (1993) 17 Cal.App.4th 271, 278 [21 Cal.Rptr.2d 420] [holding exception is "firmly rooted in the law"]; *Williamson* v. *United States, supra,* 512 U.S. at pp. 604-605 [114 S.Ct. at p. 2437-2539, 129 L.Ed.2d at p. 486] [recognizing split in federal authorities

[7]*Roberts* sets out the general rule; a showing of unavailability and independent indicia of reliability not always mandated by the Constitution. (*Bourjaily* v. *United States* (1987) 483 U.S. 171, 182-183 [107 S.Ct. 2775, 2782-2783, 97 L.Ed.2d 144] [independent indicia of reliability not required for coconspirator statements, a firmly rooted exception to hearsay rule].)

[8]Declarations against other types of interest are not before us in this case, and we express no opinion thereon.

and declining to decide question].) If it does, of course, reliability can be inferred without more. (*Ohio* v. *Roberts, supra,* 448 U.S. at p. 66 [100 S.Ct. at p. 2539].) Even if it does not, however, the evidence "may nonetheless meet Confrontation Clause reliability standards if it is supported by a 'showing of particularized guarantees of trustworthiness.' [Citation.]" (*Lee* v. *Illinois* (1986) 476 U.S. 530, 543 [106 S.Ct. 2056, 2063, 90 L.Ed.2d 514].) In our view, a declaration which "so far subjected [the declarant] to the risk of . . . criminal liability . . . that a reasonable man in his position would not have made the statement unless he believed it to be true" (§ 1230) bears adequate "indicia of reliability" so as to satisfy the confrontation clause. "[T]he very fact that a statement is genuinely self-inculpatory . . . is itself one of the 'particularized guarantees of trustworthiness' that makes a statement admissible under the Confrontation Clause." (*Williamson* v. *United States, supra,* 512 U.S. at p. 605 [114 S.Ct. at p. 2437, 129 L.Ed.2d at p. 486].)

Of course, a trial court deciding whether to admit evidence under section 1230 must still examine the evidence, in the first instance, for trustworthiness. As the California Supreme Court has explained,

"The focus of the declaration against interest exception to the hearsay rule is the basic trustworthiness of the declaration. [Citations.] In determining whether a statement is truly against interest within the meaning of Evidence Code section 1230, and hence is sufficiently trustworthy to be admissible, the court may take into account not just the words but the circumstances under which they were uttered, the possible motivation of the declarant, and the declarant's relationship to the defendant. [Citation.]

" 'The decision whether trustworthiness is present requires the court to apply to the peculiar facts of the individual case a broad and deep acquaintance with the ways human beings actually conduct themselves in the circumstances material under the exception. Such an endeavor allows, in fact demands, the exercise of discretion.' [Citation.]" (*People* v. *Frierson* (1991) 53 Cal.3d 730, 745 [280 Cal.Rptr. 440, 808 P.2d 1197].)[9] When sufficient trustworthiness is present to make the statement truly against interest within the meaning of section 1230 and the declarant is unavailable, admission of the statement does not violate the federal Constitution. In short, the same

---

[9]In *Frierson*, the trial court properly excluded a statement made under circumstances which reasonably suggested the declarant wanted to aid his friend (the defendant) at little risk to himself. (*People* v. *Frierson, supra,* 53 Cal.3d at p. 745.) Here, by contrast, the statements at issue essentially constituted confessions to first degree murder with a special circumstance, thereby potentially subjecting the declarants to exceedingly heavy punishment. Such statements are on their face, against the declarants' penal interests. (*People* v. *Cudjo* (1993) 6 Cal.4th 585, 607 [25 Cal.Rptr.2d 390, 863 P.2d 635].)

facts that render a statement admissible under the Evidence Code "provide indicia of reliability sufficient to satisfy the confrontation clause . . . ." (*People* v. *Wilson, supra,* 17 Cal.App.4th at p. 278.)

In *People* v. *Greenberger* (1997) 58 Cal.App.4th 298 [68 Cal.Rptr.2d 61], Division Four of the Court of Appeal, Second Appellate District reached the same conclusion—"that admission of a statement possessing sufficient indicia of reliability to fall within the hearsay exception of a declaration against penal interest does not deny a defendant the right of confrontation guaranteed by the United States Constitution." (*Id.* at pp. 330-331.) In so holding, the court criticized this court's opinion in *People* v. *Coble, supra,* 65 Cal.App.3d 187 as being based on a misreading of the plurality opinion in *Dutton* v. *Evans* (1970) 400 U.S. 74 [91 S.Ct. 210, 27 L.Ed.2d 213] and as running afoul of article I, section 28, subdivision (d) of the California Constitution. (*Greenberger, supra,* at p. 330.) We agree that, to the extent it can be read as imposing a restriction on the admission of evidence that is not required to satisfy the confrontation clause, *Coble* was wrongly decided.[10]

In *Coble,* the defendant was convicted of robbery after the trial court admitted into evidence a tape-recorded statement which was given to police by a witness who was a possible coconspirator, accomplice, or aider and abettor, and which inculpated the defendant. At trial, the witness invoked his Fifth Amendment privilege against self-incrimination, and the statement was admitted pursuant to section 1230. On appeal, the defendant claimed that admission of the statement violated his Sixth Amendment right to confront witnesses. (*People* v. *Coble, supra,* 65 Cal.App.3d at pp. 190-191.)

This court found that the statement in question was both inculpatory and exculpatory: The witness attempted to minimize his role in the crime while emphasizing that of the defendant. Relying on *People* v. *Leach, supra,* 15 Cal.3d at pages 441-442 and footnote 17, we held that, because of the exculpatory character of the statement, it did not satisfy the requirements of section 1230 and, hence, was not admissible as a declaration against penal interest. (*People* v. *Coble, supra,* 65 Cal.App.3d at pp. 191-192.) We observed that the trial court should have deleted all portions of the statement relating to the defendant, and that the remaining portions were irrelevant because the witness had not been charged with any crime. (*Id.* at p. 192.)

We have no quarrel with *Coble's* conclusion that the statement did not meet the requirements of section 1230. However, the *Coble* court went

---

[10]The same is true of this court's opinion in *People* v. *Claxton* (1982) 129 Cal.App.3d 638, 666 [181 Cal.Rptr. 281], which quotes *Coble* without extended analysis.

further and held that, even assuming the statement met the requirements of section 1230, its admission violated the defendant's Sixth Amendment rights. (*People* v. *Coble, supra,* 65 Cal.App.3d at p. 193.) This part of the opinion does not withstand analysis.

The *Coble* court began by observing: "We recognize preliminarily that a hearsay statement which subjects the declarant 'to the risk of . . . criminal liability' may for that reason well be presumed to be true because 'a reasonable man in his position would not have made the statement unless he believed it to be true.' (Evid. Code, § 1230.) But, the fact that a statement is true does not satisfy the constitutional requirement of confrontation and the right of cross-examination. Truth is only one element of a witness's testimony. Every witness takes an oath to tell not only the truth, but the *whole* truth and *nothing* but the truth. The great value of cross-examination is that it affords an opportunity for the trier of fact to determine not only that the witness has testified truthfully, but that he has told the whole story and that he has not included anything which is untrue. Experience teaches every trial judge and trial lawyer that the addition of one omitted fact may well change the complexion of the entire story or the exclusion of one included fact which is untrue or partially misrepresented may likewise change the complexion of the entire story. The *whole* truth is sometimes critically different from a *partial* truth. The fact that an extra-judicial statement may be given under circumstances (such as being against penal interests) which make it probable that it is true does not for that reason automatically satisfy the constitutional right of confrontation. Only cross-examination can establish whether a true statement which satisfies the requirements of Evidence Code section 1230 is the *whole* truth and *nothing* but the truth. That, we believe, is the rationale behind the Sixth Amendment." (*People* v. *Coble, supra,* 65 Cal.App.3d at p. 193, original italics.)

The court then turned to an examination of *Dutton* v. *Evans, supra,* 400 U.S. 74. At issue in that case were statements admitted pursuant to a Georgia statute which provided, " 'After the fact of conspiracy shall be proved, the declarations by any one of the conspirators during the pendency of the criminal project shall be admissible against all,' " including statements made during the concealment phase. (*Dutton* v. *Evans, supra,* 400 U.S. at p. 78 [91 S.Ct. at p. 214.) In finding no Sixth Amendment violation, the Supreme Court declined to equate the confrontation clause and the hearsay rule, but instead confined itself to deciding the case before it. (*Dutton, supra,* at p. 86 [91 S.Ct. at p. 218].) The court observed:

"This case does not involve evidence in any sense 'crucial' or 'devastating,' as did all the cases just discussed. It does not involve the use, or

misuse, of a confession made in the coercive atmosphere of official interrogation . . . . It does not involve any suggestion of prosecutorial misconduct or even negligence . . . . It does not involve the use by the prosecution of a paper transcript . . . . It does not involve a joint trial . . . . And it certainly does not involve the wholesale denial of cross-examination . . . .

"In the trial of this case no less than 20 witnesses appeared and testified for the prosecution. Evans' counsel was given full opportunity to cross-examine every one of them. The most important witness, by far, was the eyewitness who described all the details of the triple murder and who was cross-examined at great length. Of the 19 other witnesses, the testimony of but a single one is at issue here. That one witness testified to a brief conversation about Evans he had had with a fellow prisoner in the Atlanta Penitentiary. The witness was vigorously and effectively cross-examined by defense counsel. His testimony, which was of peripheral significance at most, was admitted in evidence under a coconspirator exception to the hearsay rule long established under state statutory law. The Georgia statute can obviously have many applications consistent with the Confrontation Clause, and we conclude that its application in the circumstances of this case did not violate the Constitution." (*Dutton* v. *Evans, supra,* 400 U.S. at pp. 87-88 [91 S.Ct. at p. 219], fn. omitted.)

Somehow, from the foregoing and a concurring opinion in *Dutton*, the *Coble* court distilled the following rule: "If the extra-judicial statement is of minor importance or on a collateral issue and it satisfies the requirements of hearsay exceptions established by the rules of evidence, it is admissible, but if the extra-judicial statement goes to the heart of the case, if it is 'crucial' or 'devastating' to the defendant, then it cannot be admitted unless the defendant's constitutional right of confrontation is satisfied." (*People* v. *Coble, supra,* 65 Cal.App.3d at p. 195.) The United States Supreme Court has never imposed such a restriction on the admission of evidence.[11] We hereby disapprove *Coble* to the extent it imposes such a limitation.[12]

---

[11]*Coble* suggests that ". . . one ultimate test is whether or not the right of cross-examination would serve any useful purpose. If not, then the denial thereof is not a denial of the constitutional right of confrontation." (*People* v. *Coble, supra,* 65 Cal.App.3d at p. 196.) Presumably, whether cross-examination would serve any useful purpose is one factor a trial court may consider in examining the evidence, in the first instance, for trustworthiness.

[12]Similarly, we disapprove of *People* v. *Claxton, supra,* 129 Cal.App.3d at page 666 to the extent it finds a confrontation clause violation under the reasoning of *Coble.*

*Coble* and *Claxton* both rely, in part, on this court's opinion in *People* v. *Shipe* (1975) 49 Cal.App.3d 343 [122 Cal.Rptr. 701]. In that case, however, this court held simply that ". . . to satisfy the requirements of section 1230 of the Evidence Code and the confrontation clause of the United States Constitution, a declaration against penal interest must be 'distinctly' against the declarant's penal interest [citation] and must be clothed with indicia of reliability;

II.-V.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

The judgment is affirmed.

Vartabedian, J., and Thaxter, J., concurred.

---

such indicia of reliability are lacking where the declaration is made to authorities after the declarant has been arrested and charged with a serious offense or after he has pled guilty to a lesser offense and is awaiting sentencing *and where, as here, the statement is exculpatory in the sense that the declarant has blamed a coparticipant for the commission of the greater offense while admitting complicity to some lesser degree.*" (*People* v. *Shipe, supra,* 49 Cal.App.3d at p. 354, italics added, fn. omitted.) We fail to see how the foregoing statement gives rise to the restriction imposed in *Coble* and *Claxton.*

*See footnote, *ante,* page 956.