Filed 4/15/26  P. v. Rosales CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JORGE LUIS ROSALES,<br><br>    Defendant and Appellant. | 2d Crim. No. B334514<br>(Super. Ct. No. VA146646)<br>(Los Angeles County) |

Jorge Luis Rosales (Appellant) appeals from the judgment after a jury convicted him of the first degree murder of Adrian Casas (Pen. Code,[1] §§ 187, subd. (a), 189, subd. (a); count 1), assault with a firearm on Martin Magallon (§ 245, subd. (a)(2); count 2), and being a felon in possession of a firearm (§ 29800, subd. (a)(1); count 11).  The jury also found true firearm enhancements as to count 1 (§ 12022.53, subds. (b), (c) & (d)) and count 2 (§ 12022.5, subd. (a)).  In a bifurcated proceeding, the trial court also found Appellant had been previously convicted of

---

[1] Undesignated statutory references are to the Penal Code.

a "strike" offense (§§ 667, subds. (b)–(i), 1170.12) consisting of a gang-enhanced firearm possession charge (former § 12031, subd. (a)(1), § 186.22, subd. (b)(1)(A)). The court sentenced Appellant to state prison for 75 years to life, plus a consecutive determinate sentence of 19 years, four months.

Appellant contends: (1) the trial court erred when it admitted the codefendant's statement implicating Appellant, (2) evidence of Appellant's criminal history was improperly admitted, (3) the prosecutor committed misconduct when discussing reasonable doubt in closing argument, (4) the cumulative effect of errors requires reversal, (5) multiple sentences were improperly imposed for assault with a firearm and felon in possession of a firearm, and (6) the prosecution did not establish the prior conviction constitutes a strike. We vacate the true finding regarding the strike prior and remand for retrial of the strike. In all other respects, we affirm.

FACTUAL AND PROCEDURAL HISTORY

*The shooting*

In May 2017, Richard Magallon, his cousin Martin Magallon,[2] and Adrian Casas attended a family gathering at the house of Richard's uncle. Richard drove his uncle's motorized bicycle around the neighborhood. It was still light outside. He rode past a parked four-door black car and saw two men inside. Richard felt someone was "mad-dogging" him, which meant giving him "an ugly stare." Richard saw that the man in the passenger seat had a tattoo of large letters across his neck. Richard later identified him as Appellant.

---

[2] Because they share the same last name and for ease of reference, we refer to Richard and Martin Magallon by their first names. No disrespect is intended.

When Richard returned to the house, Martin and Casas were in front. The black car drove past the house, turned around, then turned into the cul-de-sac where the house was located. The car stopped in front of the driveway. Appellant got out of the car. He had a neck tattoo of a letter in Old English writing.

Appellant held a firearm covered with a black bandana. He pointed the firearm at Martin and asked him and Casas, "Where are you vatos from?" Martin said he was "from here" and "Maravilla." Appellant told Martin to lift his shirt. Martin complied, displaying a Maravilla tattoo. Appellant then asked Casas where he was from, and told him to lift his shirt. Casas did not reply and did not lift his shirt. Appellant then shot Casas twice. Casas died of his injuries. Casas did not have any gang tattoos and was not affiliated with a gang.

*Traffic collision*

Five days later, police attempted to pull over a black four-door Saab sedan. The Saab crashed head-on with another vehicle. Three passengers exited the Saab and fled. Police found a .38 special revolver, wrapped in a blue bandana, in the street where the passengers had run. The driver ran in a different direction and evaded apprehension. An eyewitness identified him as codefendant Nicholas Gonzalez.

*Investigation*

Surveillance video shortly before the shooting captured a four-door black vehicle with a "defect" on the driver's side taillight driving near the shooting scene. Appellant's and at least two other people's DNA was found on the grip of the revolver police had found near the traffic collision. Gonzalez was excluded as a major contributor of the DNA. A firearms examiner determined an expended bullet found at the shooting scene was

discharged from the revolver found near the traffic collision.

Appellant's social media included posts of him together with Gonzalez. Gonzalez's social media posts included a photograph of a 2003 Saab with tape on the driver's side taillight. Appellant's fingerprints or palmprints were found on the exterior of the Saab's front passenger door above the handle and on the exterior of the rear windows. Gonzalez's palmprints were found on the exterior of the Saab.

Police conducted a *Perkins* operation in which Gonzalez made statements to an undercover operative that implicated Appellant.[3] Police also conducted an "overhear operation" in which Gonzalez was placed on a bench outside Appellant's cell and the conversation was recorded. Appellant told Gonzalez he thought he was "a rat." Gonzalez responded, "[Y]ou thought I was telling on you?" Gonzalez said that before they crashed the car, he gave a "strap" (firearm) to Lil Demon. Gonzalez told Lil Demon to get out of the car and run, and "when you get ahold of Husky, give him the thing." "Husky" was Appellant's gang moniker.

### Trial

Richard identified Appellant in the courtroom based on his neck tattoo, not his face.

A gang expert testified that Appellant and Gonzalez were members of the Los Nietos gang and of the Dukes, a clique or subset of Los Nietos. "Los Nietos" was tattooed on the back of Appellant's head, and "Dukes" was tattooed on his neck. The

---

[3] In a *Perkins* operation, a suspect is placed in a cell with an undercover operative who the suspect does not know is a police agent to obtain the suspect's statements. (*Illinois v. Perkins* (1990) 496 U.S. 292, 294, 298.)

shooting occurred in the gang territory of Quiet Village, a rival of Los Nietos. Maravilla was an East Los Angeles gang. The expert did not know if it was a rival of Los Nietos.

The expert also testified that when a gang member asks someone "Where are you from," it is a gang challenge that means "What hood are you from? What gang are you from?" If the other person does not respond, it could be perceived as disrespect that could lead to them being killed.

During a break in the trial, Richard was threatened by Appellant, who gestured by drawing his thumb across his neck.

*Sentence*

For count 1, the court sentenced Appellant to 25 years to life, doubled for the strike, plus 25 years for personally and intentionally discharging a firearm causing great bodily injury or death (§ 12022.53, subd. (d)). For count 2, the court imposed a consecutive term of eight years (four years doubled), plus 10 years for personal use of a firearm (§ 12022.5, subd. (a)). For count 11, the court imposed a consecutive term of 16 months (one-third the middle term doubled). The total indeterminate sentence was 75 years to life, plus a consecutive determinate sentence of 19 years, four months.

DISCUSSION

*Statements of codefendant*

Appellant contends the trial court erred when it admitted statements of codefendant Gonzalez in the *Perkins* operation that implicated Appellant. We are not persuaded.

*1. Facts*

Police placed Gonzalez in a cell with a paid operative and audio recorded the conversation without Gonzalez's knowledge.

5

Gonzalez told the operative he had a "crimey"[4] in the same jail, "I think on this case." Gonzalez said, "I need to tell my wife to be my alibi, fool." He said police wanted to talk to him but "I don't know shit," and "I didn't do nothing."

Police then removed Gonzalez from the cell. They told him both he and his "crimey" would probably be charged with homicide. Police then told him they had a car and a firearm used in the crime and had DNA evidence. They also falsely said the individual involved with Gonzalez was assisting police. When police later asked for the name of his "crimey," Gonzalez responded, "Uh, George, uh, Rojas or whatever."

Gonzalez was returned to the cell with the *Perkins* operative. Gonzalez said the police had evidence and "[t]hey know who did it, everything." He said police had "the car that I was in" and "[t]he strap" (firearm). He said, "the one that shot, did the murder turned on me." He said, "I don't know nothing" but then said, "I was in the—I was—I was there when it happened." He said he wasn't the shooter.

The operative said detectives were "talking to some fool in the front, right now." Gonzalez said, "Yeah. He's telling on me." Gonzalez said his "crimey" had a Dukes tattoo and was named "Husky."

The operative asked how police could charge Gonzalez if the other guy did it. Gonzalez said, "But I'm accessory to murder."

Gonzalez told the operative the car was a 2003 Saab. He said he crashed it four days later. He told a "homie" to hold the .38 caliber firearm, but the "homie" got caught with it. Gonzalez

---

[4] A detective testified a "crimie" (also spelled "crimey") is an individual who has "a shared interest in a particular crime."

said he ran from the scene.

At trial, the court excluded portions of the *Perkins* operation in which Gonzalez identified Appellant as the person who shot him,[5] but otherwise denied the defense motion to exclude evidence of the *Perkins* operation.

### 2. Forfeiture

Appellant acknowledges his trial counsel only challenged the statements in the *Perkins* operation based on *Miranda v. Arizona* (1966) 384 U.S. 436, which he does not raise on appeal. He has forfeited his appellate challenges based on hearsay and due process because he did not raise them below. (*People v. Hill* (1992) 3 Cal.4th at 959, 994–995.)

We also conclude that forfeiture is not excused based on ineffective assistance of counsel because Appellant has not established that his counsel's performance was deficient or that he suffered prejudice. (*Strickland v. Washington* (1984) 466 U.S. 668 (*Strickland*).) "On direct appeal, a conviction will be reversed for ineffective assistance only if (1) the record affirmatively discloses counsel had no rational tactical purpose for the challenged act or omission, (2) counsel was asked for a reason and failed to provide one, or (3) there simply could be no satisfactory explanation." (*People v. Mai* (2013) 57 Cal.4th 986, 1009.)[6]

Here, Appellant has not shown that his attorney could not

---

[5] Appellant was originally also charged with shooting Gonzalez. That count was dismissed.

[6] We decline to treat the Attorney General's failure to discuss forfeiture and the claim of ineffective assistance as a concession. (*People v. Hill, supra,* 3 Cal.4th at p. 995, fn. 3.)

7

have had a tactical reason not to object. Gonzalez told the *Perkins* operative that he "didn't do" and "didn't know" anything. He did not tell the *Perkins* operative his "crimie" was Appellant, and told police it was "George . . . Rojas," who is arguably another person. Counsel argued to the jury that Appellant was not present during the shooting and that Gonzalez created an artificial subject named George Rojas to "offer up to the detectives." Thus, counsel could have rationally decided not to object on hearsay grounds because counsel wanted to challenge the veracity of Gonzalez's statements. And even if counsel was deficient, Appellant cannot establish prejudice because his challenge to Gonzalez's statements fails on the merits. As discussed below, they were properly admitted as declarations against interest.

### 3. Declaration against interest

Evidence Code section 1230 provides a hearsay exception for statements by one who is "unavailable as a witness" which "so far subjected him to the risk of civil or criminal liability . . . that a reasonable man in his position would not have made the statement unless he believed it to be true." Admission of these statements is reviewed for abuse of discretion. (*People v. Jasso* (2025) 17 Cal.5th 646, 669 (*Jasso*); *People v. Cortez* (2016) 63 Cal.4th 101, 125, fn. 5 [rejecting de novo standard].) Portions of statements may be admissible "that, though not independently disserving of the declarant's penal interests, also are not merely 'self-serving,' but 'inextricably tied to and part of a specific statement against penal interest.' " (*People v. Grimes* (2016) 1 Cal.5th 698, 715.)

To be admissible, the statements must also be trustworthy. (*People v. Grimes*, *supra*, 1 Cal.5th at p. 711.) Trustworthiness is

8

based on "the totality of the circumstances in which the statement was made, whether the declarant spoke from personal knowledge, the possible motivation of the declarant, what was actually said by the declarant and anything else relevant to the inquiry." (*People v. Greenberger* (1997) 58 Cal.App.4th 298, 334 (*Greenberger*).)

In *Greenberger*, statements were properly admitted that, like the statements here, implicated the declarant as the driver in a murder and a codefendant as the shooter. (*Greenberger*, *supra*, 58 Cal.App.4th at pp. 336–337.) Statements implicating both the declarant and a codefendant are trustworthy when " 'made under circumstances that . . . suggest reliability . . . such as statements made to a personal acquaintance in a noninvestigatory context where the setting suggests no motive to speak falsely' " or to "shift blame or curry favor." (*Id*. at p. 334.)

Gonzalez spoke to an individual who appeared to be another inmate who would not be able to affect the outcome. Gonzalez's statements regarding Appellant were trustworthy because they "were an integral part of the statement in which he implicated himself" as an accessory to murder.[7] (*Greenberger*, *supra*, 58 Cal.App.4th at p. 340.)

And in *Jasso*, our Supreme Court held that an accomplice's statements were admissible as declarations against interest even though they named the defendant as the actual shooter because they exposed the accomplice to liability for serious crimes. (*Jasso*, *supra*, 17 Cal.5th at pp. 669–670.) Similarly here, Gonzalez admitted being in the car, telling another person to

---

[7] Gonzalez was more accurately liable as an aider and abettor. (§§ 31, 971; *People v. Beeman* (1984) 35 Cal.3d 547, 554–556.)

9

take the murder weapon, and being an "accessory to murder." As in *Jasso*, there is no evidence that Gonzalez's statements were made "in an attempt to shift blame or curry favor with authorities." (*Id.* at p. 670.)

*People v. Gallardo* (2017) 18 Cal.App.5th 51, 70–76, upon which Appellant relies, is not to the contrary. There, the defendant told an informant he waited in a vehicle while a codefendant drove another vehicle and shot the victim. (*Id.* at pp. 72–73.) The context of Gallardo's statements was his frustration that "law enforcement and a 'snitch' were trying to 'pin' the entire crime on him." (*Id.* at p. 73.) Gallardo responded by attempting to blame the "snitch." (*Id.* at p. 74.) But here, Gonzalez did not attempt to shift blame to another, but acknowledged his own criminal responsibility.

Nor is this case like *People v. Lawley* (2002) 27 Cal.4th 102, 151–155. There, the trial court excluded an inmate's statement that he committed murder because he was seeking membership in the Aryan Brotherhood. Thus, the statement "was not specifically disserving of his interests" but "might have been an exercise designed to enhance its prestige or his own." (*Id.* at pp. 154–155.) But here, Gonzalez's statements about the role of his "crimey" were an integral part of a statement that specifically disserved his own interests. There was no abuse of discretion in admitting Gonzalez's statements.

### 4. Due process

"[T]he requirements of [Evidence Code] section 1230 . . . are identical to those of the confrontation clause. Since the statements at issue here were properly admitted under section 1230, we conclude there is no constitutional violation." (*People v. Fuentes* (1998) 61 Cal.App.4th 956, 965, fn. omitted; *Jasso*, *supra*,

17 Cal.5th at p. 673.)

*Criminal history*

Appellant contends the trial court erred when it admitted testimony that referred to his prior criminal history based on tattoos and his prior contacts with the gang expert. We review this contention for abuse of discretion (*People v. Rodriguez* (1999) 20 Cal.4th 1, 9–10) and conclude there was no error.

A sheriff's sergeant, testifying as the prosecution's gang expert, testified that "you cannot get a gang tattoo from your gang unless you have put in work," meaning "you have committed crimes on behalf of the gang." He added, "So more tattoos, the more work you've put in." Testimony and photographs established that Appellant had several gang tattoos. The gang expert also testified about Appellant's gang affiliation and moniker, based in part on conversations he had with him on "[t]hree to five occasions." During cross-examination, Appellant's attorney asked "how long ago those interviews were." The expert responded: "I believe my first contact with him was when I was on patrol in Pico Rivera and I started patrol in 2008 in Pico Rivera. [¶] I believe the case he went to prison on was a case that I was the lead investigator on, an assault case. I recently spoke to him, in the Norwalk lockup was the last time."

The expert did not state whether this latest contact was related to the present case.

Appellant did not object, move to strike the testimony, ask for a cautionary instruction, or move for a mistrial. These remedies may have been sufficient to cure improper references to prior criminal history. (See *People v. Harris* (1994) 22 Cal.App.4th 1575, 1581.) We thus conclude this contention is forfeited. (*People v. Green* (1980) 27 Cal.3d 1, 22 & fn. 8

11

[challenge forfeited to evidence of other crimes].)

Forfeiture aside, we conclude there was no abuse of discretion. The evidence was relevant to show motive, i.e., that Appellant was a member of a gang, and had sufficient dedication to the gang to motivate him to attack persons he perceived to be rival gang members. (*People v. Cardenas* (2025) 18 Cal.5th 797, 819–820; see § 186.22, subd. (g) [common benefit to gang includes "targeting a perceived or actual gang rival"].)

Nor has Appellant demonstrated prejudice. Appellant stipulated that he had a felony conviction for purposes of the charge of felon in possession of a firearm (count 11). The stipulation was mentioned during jury instructions and the jury was instructed, "Do not consider this fact for any other purpose. Do not speculate about or discuss the nature of the conviction." (CALCRIM No. 2511, modified.) The prosecutor did not mention Appellant's criminal history in argument to the jury. Thus, testimony that Appellant went to prison for assault 15 years earlier and that the gang expert recently spoke with him "in the Norwalk lockup" would not likely affect the outcome of the trial. A general reference to putting in "work" and brief reference to going to prison for assault are not significant enough to cause a jury to conclude that Appellant murdered Casas. We conclude it is not "reasonably probable" that Appellant would have secured a more favorable result and that any error was harmless beyond a reasonable doubt. (*People v. Watson* (1956) 46 Cal.2d 818, 836; *Chapman v. California* (1967) 386 U.S. 18, 24.)

We also conclude Appellant has not shown that his counsel rendered ineffective assistance based on deficient performance. Appellant has not shown that there could be "no satisfactory explanation" for not objecting. (*People v. Mai, supra,* 57 Cal.4th

12

at p. 1009.) Counsel may have asked the gang expert about the timing of his contacts with Appellant to show the information was outdated. And because there was no abuse of discretion, Appellant cannot demonstrate prejudice. (*Strickland, supra*, 466 U.S. at p. 694.)

*Prosecutorial misconduct*

Appellant contends the prosecutor committed misconduct by erroneously explaining reasonable doubt to the jury. We are not persuaded.

During rebuttal argument, the prosecutor stated that reasonable doubt "leaves you with an abiding conviction." She added:

"Do you feel comfortable with your decision?

"That's it. That's it.

[¶ . . . ¶]

"You have to feel comfortable. That's what that is.

[¶ . . . ¶]

"What the law says is with the facts given, do those facts prove to you beyond a reasonable doubt?

"Do you feel comfortable with those facts?"

We do not conclude that equating proof beyond a reasonable doubt with feeling "comfortable" is an acceptable argument. (See *People v. Brigham* (1979) 25 Cal.3d 283, 290; *People v. Centeno* (2014) 60 Cal.4th 659, 667.) But if this argument misstated the law, "an admonition by the trial court to the jury . . . would have cured any harm resulting from the prosecutor's argument." (*People v. Wader* (1993) 5 Cal.4th 610, 659.) Because Appellant did not object in the trial court or ask that the jury be admonished to disregard the prosecutor's statements, the contention is forfeited. (*Ibid.*)

13

In *People v. Mendoza* (2000) 24 Cal.4th 130, 173, our Supreme Court rejected a challenge to a closing argument with similar language. The prosecutor there described reasonable doubt as " 'that feeling that you have, that you *feel comfortable with* and it's not something mystical, magical at all.' " (Italics added.) Our Supreme Court stated, "[T]he 'court's instructions, not the prosecution's argument, are determinative, for "[w]e presume that jurors treat the court's instructions as a statement of the law by a judge, and the prosecutor's comments as words spoken by an advocate in an attempt to persuade." ' " The court concluded that counsel was not "incompetent for not objecting to the prosecutor's argument on the definition of reasonable doubt," and defendant "failed to demonstrate that counsel's failure to object was prejudicial." (*Ibid*.)

Here, the trial court provided the standard jury instruction that correctly defined reasonable doubt. (CALCRIM No. 220; see § 1096.) During deliberations, the jury requested the definition of reasonable doubt, and the court again referred the jury to CALCRIM No. 220. We presume the jury followed the trial court's instructions as opposed to any conflicting statements by the prosecutor. (*People v. Centeno*, *supra*, 60 Cal.4th at p. 676.) Consequently, Appellant has not established prosecutorial misconduct because he has failed to " 'show' that in the context of the whole argument and the instructions there was ' "a reasonable likelihood the jury understood or applied the complained-of comments in an improper or erroneous manner." ' " (*People v. Silveria and Travis* (2020) 10 Cal.5th 195, 306.) Because Appellant cannot establish prejudice, we reject the claim of ineffective assistance of counsel.

*Cumulative error*

Appellant contends that cumulative errors denied his rights to due process and a fair trial. "[W]e have found no error to cumulate." (*People v. Koontz* (2002) 27 Cal.4th 1041, 1094.)

*Multiple sentences*

Appellant contends the trial court erred by imposing consecutive sentences for count 2 (assault with a firearm; § 245, subd. (a)(2)) and count 11 (felon in possession of a firearm; § 29800, subd. (a)(1)). We disagree.

Section 654 "prohibits multiple punishments for a single act or course of conduct. [Citation.] Whether an offense is an indivisible course of conduct is a fact question. We uphold the trial court's ruling when substantial evidence supports it. [Citation.] This standard of review is exceedingly deferential. [Citation.]" (*People v. Venegas* (2020) 44 Cal.App.5th 32, 38 (*Venegas*).) The court's determination that two crimes were separate may be express or implied. (*People v. Brents* (2012) 53 Cal.4th 599, 618.) " '[A] trial court may base its decision under section 654 on *any* of the facts that are in evidence at trial' " and is not limited to jury findings. (*People v. Deegan* (2016) 247 Cal.App.4th 532, 545.)

In *Venegas, supra,* 44 Cal.App.5th at pages 37–38, the court upheld multiple punishment for felon in possession of a firearm and a murder committed with the same firearm. Substantial evidence there supported the logical inference that the defendant "purposefully possessed the gun *before* the murder took place" rather than got it "only after he arrived at the murder scene." (*Id.* at p. 38.) The evidence here similarly supports the conclusion that Appellant was armed when he entered rival gang territory and possessed the firearm when he exited the car.

15

Appellant concedes on appeal that he "was armed with the gun before arriving at the shooting." As in *Venegas*, there was no evidence here that "someone handed [him] the gun at the scene." (*Ibid.*; accord, *People v. Jones* (2002) 103 Cal.App.4th 1139, 1145 [§ 654 bars multiple punishment where "the firearm came into the defendant's possession fortuitously 'at the instant of committing another offense' "].) The trial court properly sentenced him for both counts.

*Gang strike*

The trial court held a bifurcated court trial regarding the prior strike pursuant to the "Three Strikes" law (§§ 667, subds. (b)–(i), 1170.12). The evidence consisted of an abstract of judgment for a 2011 conviction, based on a guilty or no contest plea to carrying a loaded firearm pursuant to former section 12031, subdivision (a)(1),[8] with an enhancement that the crime was committed to benefit a criminal street gang pursuant to section 186.22, subdivision (b)(1)(A). No evidence was presented regarding the facts underlying the conviction. The court found the prior conviction constituted a strike.[9]

The court denied a motion to dismiss the strike pursuant to *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497. Based on the strike, the court doubled the minimum term for count 1

---

[8] Section 12031 was repealed effective January 1, 2012, and reenacted without substantive change as section 25850, subdivision (a). (Stats. 2010, ch. 711, §§ 4, 6.)

[9] The court apparently also found the prior conviction true for purposes of a five-year sentence enhancement (§ 667, subd. (a)(1)). However, the court did not impose that enhancement at sentencing.

and doubled the sentences for counts 2 and 11. (§§ 667, subd. (e)(1), 1170.12, subd. (c)(1).)

A prior felony firearm conviction constitutes a strike if "committed for the benefit of . . . a criminal street gang" pursuant to section 186.22, subdivision (b)(1). (§§ 667, subd. (d)(1), 1170.12, subd. (b)(1), 1192.7, subd. (c)(28); *People v. Briceno* (2004) 34 Cal.4th 451, 456.)

Assembly Bill No. 333 (2021–2022 Reg. Sess.) (Stats. 2021, ch. 699, §§ 3, 4), effective January 1, 2022, amended section 186.22 to narrow the definition of "benefit" to mean "to provide a common benefit to members of a gang where the common benefit is more than reputational." (§ 186.22, subd. (g).) The amendment applies retroactively to cases that are not final on appeal to determine whether a prior violation of section 186.22 constitutes a strike or a five-year sentence enhancement. (*People v. Fletcher* (2025) 18 Cal.5th 576, 586–587 (*Fletcher*).) "[C]urrent law applies in determining whether they qualify as prior serious felony convictions." (*Id.* at p. 587.)

The Attorney General concedes the prosecution did not establish the prior conviction constituted a strike pursuant to section 186.22, as amended. We agree. The "appropriate remedy" is to remand to permit the prosecution the opportunity to establish that the prior conviction constitutes a strike under current law. (*Fletcher*, *supra*, 18 Cal.5th at pp. 607–608.) Thus, we vacate the finding that the gang prior constituted a prior strike and a serious felony prior and remand for retrial, applying the elements of section 186.22 as amended by Assembly Bill No. 333, or, if it is not proven, for resentencing.

## DISPOSITION

The true finding of the prior strike and serious felony prior

is vacated and the matter is remanded for retrial of the strike or for resentencing.  If Appellant is resentenced, the trial court shall prepare an amended abstract of judgment and forward a copy to the Department of Corrections and Rehabilitation.  In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED.

BALTODANO, J.

We concur:

YEGAN, Acting P. J.

CODY, J.

Andrew C. Kim, Judge

Superior Court County of Los Angeles

_____

Patricia S. Lai, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Steven D. Matthews and Ryan M. Smith, Deputy Attorneys General, for Plaintiff and Respondent.