Filed 4/17/13  In re Barera CA5

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re JULIAN BARERA | F064000 |
| On Habeas Corpus. | (Super. Ct. No. HC012234A) |
| | **OPINION** |

APPEAL from an order of the Superior Court of Kern County.  Lee P. Felice, Judge.

Monica V. Ramallo-Young for Petitioner Julian Barera.

Lisa S. Green, District Attorney, and Alexandria Sawoya, Deputy District Attorney, for Respondent The People.

-ooOoo-

The People appeal from the grant of a petition for writ of habeas corpus filed by petitioner Julian Barera.[1]  In October 1992, Barera was arrested and charged with multiple counts of possession for sale of a controlled substance and faced a possible sentence of over 11 years in prison.  On October 22, 1992, Barera pled guilty to one count of possession for sale of a controlled substance, in exchange for dismissal of the remaining charges and a maximum possible sentence of 16 months.  Barera was represented by counsel at the time of his plea and the trial court advised Barera of his constitutional rights and immigration consequences before accepting the plea.  Barera was placed on probation, which included a condition that he be incarcerated for 12 months in the county jail.

On January 26, 2011, Barera filed a petition for writ of habeas corpus that alleged defense counsel rendered ineffective assistance by failing to (1) adequately advise him of the immigration consequences of his plea, and (2) move to suppress the evidence.  The People opposed the writ on substantive and jurisdictional grounds.  After an evidentiary hearing at which Barera did not testify, the trial court granted the writ.  We will reverse.

## FACTUAL AND PROCEDURAL SUMMARY

### *Pleadings*

Barera filed the petition for writ of habeas corpus on January 26, 2011.  In the petition he alleged his defense counsel, David Candelaria, had rendered ineffective assistance because Candelaria failed to (1) advise him of the immigration consequences of his plea, and (2) move to suppress evidence obtained from a warrantless search, to which Barera asserted he did not consent.  The trial court issued an order to show cause on the petition, which was served on the parties on February 23, 2011, directing that a

---

[1]There is some uncertainty as to the correct spelling of petitioner's last name.  The record reflects two different spellings—"Barera" and "Barrera."  For purposes of this opinion, we will use the spelling of "Barera," which corresponds with the spelling on the abstract of judgment.

2.

return be filed within 30 days of service of the order and that a traverse be filed within 30 days of service of the return.

The People filed a return on March 8, 2011. In the return, the People argued the petition should be denied because the trial court lacked jurisdiction in that Barera was not in custody or constructive custody. Barera had been in local custody for one year commencing in 1992 and after being released was on probation. Probation was violated on June 20, 1994, and a bench warrant issued. The bench warrant was twice extended. In 2010 Barera was arrested for felony driving under the influence and also on the bench warrant; he posted bail immediately. After several continuances of the probation violation matter, it was dismissed and probation terminated on February 22, 2011.

Alternatively, the People argued the petition was untimely in that it was filed 18 years after Barera entered his plea. If the trial court was inclined to grant relief, the People requested an opportunity to file a return that responded to the merits because they had received the minute order from the trial court on February 24, 2011, their file had long ago been destroyed because it was a 1992 case, and a copy of the court's file had been ordered but not yet received.

On May 2, 2011, the trial court issued an interim order to file a supplemental return. In that order, the court concluded that although Barera was not in custody or constructive custody, the court had jurisdiction to entertain the petition because the issues presented were a matter of public interest and a miscarriage of justice would result based upon Barera's allegation of ineffective assistance of counsel.

The supplemental return was filed June 13, 2011. The supplemental return had multiple exhibits attached, including the police reports from Barera's 1992 arrest, the transcript of the plea hearing in 1992, and the 1992 probation report. The People asked that the petition be denied because search and seizure claims were not cognizable in a habeas corpus petition, Barera had been informed of the immigration consequences of his plea in 1992, and Barera had unjustifiably delayed in bringing the petition.

On August 4, 2011, the trial court ordered an evidentiary hearing. The order directing the parties to appear for an evidentiary hearing stated that the police department and probation office reports, as well as the transcript of the plea and sentencing hearings pertaining to Barera's 1992 arrest, plea, and sentence, would be admitted into evidence pursuant to Evidence Code section 1280. The evidentiary hearing was set for November 9, 2011. The order also framed the issues to be addressed at the evidentiary hearing as whether (1) the search of Barera's residence was consensual, and (2) defense counsel advised Barera of the immigration consequences of entering a plea.

### *Evidentiary Hearing*

At the hearing, the People again asserted that the trial court lacked jurisdiction to hear the matter. The court indicated that "if a constitutional violation is at issue, then a delay should not prevent the Court from hearing a habeas petition." Barera's counsel objected to the People being allowed to present any testimony or evidence; the trial court allowed evidence to be presented at the hearing.

Officer Victor Lostaunau testified for the People. The police reports prepared in October 1992 stated that on October 7, 1992, Lostaunau observed Barera driving a Corvette at 65 miles per hour in a 45-mile-per-hour zone. Lostaunau stopped the vehicle for speeding and asked Barera for his driver's license and vehicle registration. Barera could not produce a license or any form of identification and had no paperwork showing ownership of the Corvette. Barera spoke "broken English" and Lostaunau spoke "decent" Spanish, but was not fluent. Barera's passenger, Javier Vargas, spoke no English. There was no documentation in the vehicle whatsoever that identified the driver, passenger, or ownership of the vehicle.

Lostaunau placed Barera under arrest for driving without a license and impounded the vehicle until ownership could be determined. Barera informed Lostaunau that he had purchased the car for $4,000 cash and his identification and all of the Department of Motor Vehicles (DMV) paperwork on the vehicle and his driver's license documentation

was at his home.  Barera asked if he could be transported to his residence, where he could produce paperwork establishing ownership of the car and his identification.

Barera and Vargas were handcuffed and placed in the back of the patrol vehicle and Lostaunau transported the two to the address on Garden Street provided by Barera. Officer Wenzinger met them at the address.  Lostaunau uncuffed Barera and Barera unlocked the door of the residence with a key from his key ring.  Barera and Lostaunau entered, while Vargas and Wenzinger waited outside.  Barera had Lostaunau follow him to a bedroom where Barera stated the paperwork was located.  On top of the dresser, in plain view, Lostaunau saw packaging material and what appeared to be narcotics residue. Lostaunau called the Bakersfield Police Department and had Officer Pete Cavazos respond to the residence because Cavazos was fluent in Spanish.

Cavazos also testified at the evidentiary hearing.  Cavazos arrived at the Garden Street address and issued warnings pursuant to *Miranda v. Arizona* (1966) 384 U.S. 436 to Barera and Vargas.  Barera and Vargas consented to a search of the residence.  At no time did Barera withdraw consent or ask the officers to halt their search.  Barera told Cavazos he was a gardener, but there was no clothing, paperwork, or equipment related to a gardening business on the premises.

During the search, DMV paperwork was located in a drawer of the dresser.  The drawer also contained cocaine, methamphetamine, and a large amount of packaging materials, including balloons, plastic baggies, a small gram scale, and a razor blade. Other items were found in the residence, including $250 in cash and 10 grams of marijuana.  Barera also had $192 cash on his person.

Barera had a pager in his possession and documentation found in the Garden Street residence indicated the pager number was registered to a Jorge Guardado Ortega, with an address on Haley Street.  The officers spoke to the landlord of the Garden Street address, who identified Barera as Jorge Guardado and the one who paid the rent.  The

landlord stated she had rented the premises to three Hispanic males. Vargas and Barera were transported to the jail and booked on controlled substance charges.

Candelaria did not appear at the evidentiary hearing. He had spoken with Barera's counsel and stated he had no independent recollection of the case. Candelaria also told counsel he destroys files after 10 years and, since the case dated to 1992, he no longer had any records from the case.

The transcript of the plea hearing, which the trial court had admitted into evidence by its order setting the evidentiary hearing, established that at the plea hearing Barera was represented by counsel and had an interpreter present to assist him. The People and Candelaria represented that there was an agreed-upon disposition for Barera to plead to one count, with the low term of 16 months in prison as the lid and the other charges to be dismissed. The trial court addressed Barera and stated, "Before I can accept that plea, I must make sure you understand your Constitutional rights and that you're willing to give up those rights." Candelaria requested an opportunity to speak with Barera, which was granted. The trial court then stated, "[L]et the record reflect that counsel has had a lengthy discussion with his client."

The trial court informed Barera that he had the right to "fight the charges" and subpoena, confront and cross-examine witnesses, be tried by a jury, and other rights. If Barera chose not to give up his rights and instead to fight the charges, there was no agreement on a sentencing lid and Barera faced a possible 11 years 8 months in prison if found guilty of all charges. Barera stated he still wished to plead guilty and the trial court proceeded to explain to Barera that he would be asked "one by one, if you understand [your rights] and if you want to give them up."

As the trial court proceeded to inform Barera of his rights, Barera often indicated he understood, but occasionally asked for further explanation of a statement, which the trial court gave. Candelaria also was permitted to speak with Barera if Barera indicated he needed further explanation or had a question about his rights.

6.

When the trial court explained that Barera, after serving time in custody, could be released on parole for up to four years, Barera stated, "But I want to return to Mexico." The court responded, "I'm not sure that you'll be permitted to do that." Barera replied, "I'm not going to be staying here." Candelaria then requested to discuss the matter with his client, and he and Barera engaged in an off-the-record conversation. The trial court then proceeded with the following advisement:

> "Also, if you are not a citizen of the United States and you enter this plea of guilty, you could be deported, you could be denied admission to the United States, and you could be denied naturalization pursuant to the laws of the United States. Do you understand that?

> "BARERA: Yes."

Later, the trial court asked Barera if he had "discussed this plea and what can happen to you with your attorney," to which Barera responded, "Yes." The trial court also asked Barera if he had any questions for the court or anything he would like to discuss with his attorney before entering a plea, to which Barera responded, "No." After this exchange, the trial court read the charge and accepted Barera's plea.

The probation department's documents admitted into evidence stated that on February 11, 1993, the probation officer instructed Barera on the terms and conditions of his probation. Barera was instructed to report monthly, by form, and make payments on his court-ordered fines and fees at the rate of $35.00 per month. On April 29, 1993, Barera reported to the probation department and signed extradition forms to leave California and return to Mexico to visit his mother. As of June 10, 1994, Barera had failed to pay as instructed; the probation department had not received any information that Barera had returned from Mexico and had not received any contact from him; an attempt to locate Barera at his last known address was unsuccessful; and probation no longer knew where Barera was located. A bench warrant issued.

7.

Barera did not testify or present any evidence at the hearing. Barera's declaration filed in support of the petition stated that he never gave consent for the search of his residence in 1992. He declared that at the time he pled guilty, he did not understand the nature of the charges or the consequences of pleading guilty. Barera went to Mexico for a period of about three years after being released from custody, after which he returned to the United States. Barera married a United States citizen, and he and his wife have four children, all of whom are citizens. In 2001 United States Immigration and Naturalization Services denied Barera's residency petition because of his 1992 conviction. He contacted several attorneys after being denied legal residency but was told there was nothing that could be done about his conviction. Barera stated that had he known the immigration consequences of his plea, he never would have pled guilty. Barera was arrested in October 2010 for driving under the influence.

In arguing the matter at the evidentiary hearing, Barera's counsel stated, "[T]he issue is not whether or not there was consent. It's not whether the search was legal.… The issue is whether a reasonable attorney looking at the documents before him and discussing the case with his client would have thought that a search motion was warranted." On the immigration consequences, Barera's counsel stated that "as a matter of law" it was not sufficient that the trial court had given the advisements—defense counsel also had to investigate and explain the immigration consequences to Barera.

At the conclusion of the presentation of evidence by the People, the trial court stated, "Given the lack of any evidence on the advisal regarding immigration consequences, I'm inclined to grant the writ." The trial court went on to state, "Case law is clear. It takes more than the mere advisal of a defendant that he might be deported."

The People asked for a ruling on the issue of timeliness and the trial court responded that it "implicitly" had found, "under the circumstances of this case, the timeliness issue has been met." When the People asked for clarification as to how the timeliness and jurisdiction issues had been met, the trial court responded, "I'm not under

8.

oath. And I'm not here to answer your questions, Counsel. I'm ruling on the writ. And that's the extent of it."

The People asked to make a record and proceeded to point out that Barera presented no testimony or evidence in support of his petition; the documents submitted by Barera with his motion constituted inadmissible hearsay; the petition for habeas corpus had not been timely prosecuted; and Barera had been advised by the trial court of the immigration consequences of his plea at the time he entered the plea and had stated affirmatively that he understood the immigration consequences. The People argued that Barera had failed to meet his burden of proof because he had not submitted any competent evidence and the petition should be denied.

The trial court's initial ruling granting the petition for writ of habeas corpus on the basis Barera had not received advice of counsel on the immigration consequences of entering a plea became the trial court's order.

## DISCUSSION

The People contend the trial court's grant of the petition for writ of habeas corpus was erroneous and the petition should have been denied as a matter of law. Issues presented by the People in this appeal of the order granting the petition for writ of habeas corpus are whether (1) the trial court had jurisdiction to grant the petition, (2) the petition was untimely, and (3) Barera met his burden of proving ineffective assistance of counsel for failing to advise of immigration consequences or in failing to move to suppress evidence.

## I.      Standard of Review

A petitioner in a habeas proceeding has the burden of presenting facts, which, if credited, prove a prima facie case for the relief sought. (*In re Lawler* (1979) 23 Cal.3d 190, 195.) A trial court receiving a petition for writ of habeas corpus evaluates it by asking whether the petitioner would be entitled to relief if his or her factual allegations are true. (*People v. Duvall* (1995) 9 Cal.4th 464, 474-475.) If the court so finds, it must

9.

enter an order to show cause that constitutes a preliminary determination that the petition sets forth facts, which, if true, would entitle the petitioner to the relief sought. (*In re Serrano* (1995) 10 Cal.4th 447, 455.) The issuance of an order to show cause gives the respondent the right to file a return to the petition; the petitioner then is entitled to file a reply, called a traverse, to the respondent's return. (*Ibid*.) The interplay between the return and the traverse frames the issues for decision by the trial court, and the court must then determine

> "'whether an evidentiary hearing is needed. If the written return admits allegations in the petition that, if true, justify the relief sought, the court may grant relief without an evidentiary hearing. [Citations.] Conversely, [if the court finds] that the contentions advanced in the petition lack merit, … the court may deny the petition without a hearing. [Citations.] Finally, if the return and traverse reveal that petitioner's entitlement to relief hinges on the resolution of factual disputes, then the court should order an evidentiary hearing.'" (*Ibid.*)

Where, as here, a trial court has granted a petition for writ of habeas corpus following an evidentiary hearing and the People have appealed, this court "applies the substantial evidence test to the trial court's resolution of pure questions of fact and independently reviews questions of law, such as the selection of the controlling rule. With respect to mixed questions of law and fact, this court reviews the trial court's application of law to fact under a deferential clearly erroneous standard if the inquiry is predominantly factual. But when the application of law to fact is predominantly legal, such as when it implicates constitutional rights and the exercise of judgment about the values underlying legal principles, this court's review is de novo. [Citations.]" (*In re Collins* (2001) 86 Cal.App.4th 1176, 1181; see also *In re Pratt* (1999) 69 Cal.App.4th 1294, 1314.)

## II.    Lack of Jurisdiction

The People contend the trial court erroneously concluded it had jurisdiction to hear the petition.[2]  The trial court concluded it had jurisdiction to hear the petition because courts have "discretion to hear cases which are normally moot given collateral consequences of deportation and the public interest to prevent alleged law enforcement abuses as well as adjudicate ineffective assistance of counsel claims.  [Citations.]"  The trial court was incorrect.

Penal Code section 1473, subdivision (a)[3] provides:  "Every person unlawfully imprisoned or restrained of his liberty, under any pretense whatever, may prosecute a writ of habeas corpus, to inquire into the cause of such imprisonment or restraint."  Generally, a defendant must be in actual or constructive custody at the time the order to show cause issues in order to establish jurisdiction.  (*In re Sodersten* (2007) 146 Cal.App.4th 1163, 1217 (*Sodersten*).)  Here, the trial court issued the order to show cause on February 10, 2011, which was served on the parties on February 23, 2011.  Probation was terminated, however, on February 22, 2011.

One who is on probation may petition for a writ of habeas corpus, as that is constructive custody.  (*People v. Villa* (2009) 45 Cal.4th 1063, 1069 (*Villa*).)  Once probation terminates, however, the petition becomes moot, as a "key prerequisite to gaining relief on habeas corpus is a petitioner's custody."  (*Ibid.*)  As soon as Barera's probation ended, there was no constructive custody to serve as a basis for the trial court's exercise of jurisdiction.

When the return challenges the petitioner's custody or constructive custody status, the burden of proof shifts to the petitioner to produce evidence establishing constructive

---

[2]To the extent the People concede jurisdiction in this appeal, after challenging it in the trial court, we decline to accept the concession.

[3]All further statutory references are to the Penal Code unless otherwise stated.

custody. (*In re Wessley W.* (1981) 125 Cal.App.3d 240, 247 (*Wessley W.*).) Here, the People's initial return challenged Barera's constructive custody status and his ability to prosecute the petition for writ of habeas corpus. A necessary prerequisite to issuance of the writ is custody or restraint of the petitioner by the government; it is not "an all-inclusive remedy available at all times as a matter of right." (*Villa, supra,* 45 Cal.4th at pp. 1068-1069.) Barera was not at risk of any custody or restraint on his liberty when the writ issued.

The trial court's conclusion that it had jurisdiction to continue to entertain the petition because of collateral immigration consequences also is wrong. Collateral consequences of a conviction, including immigration and deportation proceedings, cannot satisfy the jurisdictional requirement. (*Villa, supra,* 45 Cal.4th at p. 1074; *People v. Kim* (2009) 45 Cal.4th 1078, 1108; *Mendez v. Superior Court* (2001) 87 Cal.App.4th 791, 796.)

We recognize that courts, under certain circumstances, have the ability to continue to hear a matter that is moot. Even though moot, a court properly may exercise jurisdiction in instances where the issue is of great public import and transcends the interests of the parties. (*In re Stevens* (2004) 119 Cal.App.4th 1228, 1232-1233.)

This case, however, does not present novel issues that transcend the interests of the parties. Nor is the integrity of the judicial system at stake as, for example, when the state withholds exculpatory evidence that bears directly on a defendant's guilt or innocence. (*Sodersten, supra,* 146 Cal.App.4th at p. 1218.)

A petition for writ of habeas corpus is a collateral attack on a presumptively valid judgment. (*In re Bacigalupo* (2012) 55 Cal.4th 312, 332.) It is designed for a person who may later be incarcerated or lose his or her liberty if relief is not granted. (*Wessley W., supra,* 125 Cal.App.3d at p. 246.) Barera is not such a person.

Because we conclude the trial court lacked jurisdiction to grant the petition, we need not address the timeliness issue.[4]  Assuming, however, the trial court had *any* valid basis for continuing to exercise jurisdiction over a moot case, we will address, and reject, the petition on the merits.

## III.    Claim of Ineffective Assistance of Counsel

In order to establish a claim of ineffective assistance of counsel, the defendant must show that counsel's performance fell below an objective standard of reasonableness and that the defendant was prejudiced as a result of counsel's errors.  (*Strickland v. Washington* (1984) 466 U.S. 668, 687-688 (*Strickland*); *In re Harris* (1993) 5 Cal.4th 813, 832-833 (*Harris*); accord, *Lockhart v. Fretwell* (1993) 506 U.S. 364, 369; see also *People v. Jackson* (1996) 13 Cal.4th 1164, 1217.)  Prejudice is established where there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different.  (*Strickland,* at pp. 691-692; *Harris,* at p. 833.)  The test of prejudice, however, is not solely one of outcome determination.  The question also is whether counsel's deficient performance rendered the outcome unreliable or fundamentally unfair. (*Lockhart,* at p. 369; *Harris,* at p. 833.)

"*Strickland* applies to 'ineffective-assistance claims arising out of the plea process.'  [Citation.]"  (*People v. Reed* (1998) 62 Cal.App.4th 593, 597.)  What is true about a decision by a defendant to reject a plea bargain equally is true about a decision by a defendant to accept a plea bargain.  Such a decision "should not be made by a defendant encumbered 'with a grave misconception as to the very nature of the proceeding and

---

[4]Were we to address the timeliness issue, we would conclude the petition was untimely.   Barera was aware of the negative immigration consequences years before he filed the petition, and his probation status, with the exercise of due diligence, readily was discoverable by him substantially earlier than the time of the filing of his petition.  The delay was prejudicial to addressing the petition on the merits.  (*In re Clark* (1993) 5 Cal.4th 750, 759; *People v. Castaneda* (1995) 37 Cal.App.4th 1612, 1618-1619 [addressing petition for writ of error coram nobis].)

13.

possible consequences.' [Citation.]" (*In re Alvernaz* (1992) 2 Cal.4th 924, 936 (*Alvernaz*).) The mere statement by the defendant that he or she would not have accepted the plea but for counsel's deficient representation is not enough alone to prove prejudice. When the claim of incompetent representation involves rejection of a plea bargain, a defendant's "self-serving statement—after trial, conviction, and sentence—that with competent advice he or she *would* have accepted a proffered plea bargain, is insufficient in and of itself to sustain the defendant's burden of proof as to prejudice .…" (*Id.* at p. 938.) Such an assertion "must be corroborated independently by objective evidence," because a "contrary holding would lead to an unchecked flow of easily fabricated claims." (*Ibid.*)

"We note the ease with which a defendant, after trial, may claim that he or she received inaccurate information from counsel concerning the consequences of rejecting an offered plea bargain. 'It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence .…' [Citation.] Furthermore, such a claim may be difficult or impossible to refute directly. The attorney-client privilege may protect against disclosure of the precise information given a defendant by counsel during the plea negotiation process until the defendant decides to waive that privilege, possibly years later, when claiming he or she was incompetently counseled. At that time, defense counsel's recollection of the communications and advice given the client and the client's response to that advice, if unrecorded, may well have faded or disappeared entirely." (*Alvernaz, supra*, 2 Cal.4th at p. 938.)

We think the *Alvernaz* principles also should govern the situation where the defendant claims that inadequate representation led him or her to accept a plea. The considerations relied upon by the *Alvernaz* court are just as present in cases of accepted pleas as they are in cases of rejected pleas, and the potential for easily fabricated claims is just as real. A defendant unhappy with a plea bargain might seek to secure an even better deal by alleging ineffective assistance in the anticipation that the passage of time will

14.

make refutation of the incompetence claim difficult and success at a trial on the reinstated charges problematic for the prosecution. A defendant's self-serving statement, made after sentence under an accepted and effectuated plea bargain, that with competent representation he or she would have rejected the plea deal is insufficient in and of itself to sustain the defendant's burden of proof with respect to the prejudice prong of the doctrine of incompetence of counsel. (See *Alvernaz, supra*, 2 Cal.4th at p. 938.) Such an assertion "must be corroborated independently by objective evidence." (*Ibid*.)

### *Advisal of Immigration Consequences*

We first note that Barera has failed to establish defense counsel's performance fell below an objective standard in 1992; defense counsel had no duty to advise of immigration consequences in 1992. The seminal case establishing such a duty, *Padilla v. Kentucky* (2010) 559 U.S. 356, ___ [130 S. Ct. 1473, 1483], was issued in 2010, 18 years after Barera entered his plea and his conviction was final. In *Chaidez v. United States* (2013) ___ U.S. ___ [133 S.Ct. 1103, 1113], the United States Supreme Court held that defendants whose convictions became final before *Padilla* cannot benefit from its holding because *Padilla* established a new duty and does not apply retroactively.

Barera contends in his brief, and at oral argument, that the holding in *Padilla* does not control his situation. He cites *People v. Soriano* (1987) 194 Cal.App.3d 1470 as authority establishing an affirmative duty for defense counsel to advise of immigration consequences. Not so. There, defense counsel did not give full and complete advice to the defendant. The appellate court held that if counsel gives advice concerning immigration consequences, he or she must do so fully and completely. The appellate court did not hold that counsel had a duty to give such advice in the first instance. Here, Barera claims that defense counsel gave no advice, not that the advice was not full and complete.

Regardless, Barera has failed to establish any prejudice from lack of an advisal by his attorney.

15.

The following exchange took place at the hearing where Barera entered his plea of guilty pursuant to a plea agreement. The trial court explained that Barera, after serving time in custody, could be released on parole for up to four years, and Barera stated, "But I want to return to Mexico." The trial court responded, "I'm not sure that you'll be permitted to do that." Barera replied, "I'm not going to be staying here." Candelaria then asked to discuss the matter with his client, and he and Barera engaged in an off-the-record conversation. The trial court then gave the following advisement:

> "Also, if you are not a citizen of the United States and you enter this plea of guilty, you could be deported, you could be denied admission to the United States, and you could be denied naturalization pursuant to the laws of the United States. Do you understand that?

> "BARERA: Yes."

As the reporter's transcript shows, Barera received the advisements required by section 1016.5, and therefore Barera has failed to establish ineffective assistance of counsel because he cannot show prejudice. Section 1016.5 provides in pertinent part:

> "(a) Prior to acceptance of a plea of guilty or nolo contendere to any offense punishable as a crime under state law, except offenses designated as infractions under state law, the court shall administer the following advisement on the record to the defendant:

> "If you are not a citizen, you are hereby advised that conviction of the offense for which you have been charged may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States."

First, the only evidence that Candelaria failed to inform Barera of the immigration consequences of his plea is Barera's self-serving statement to that effect. As was noted in *Alvernaz,* a defendant's self-serving statement made many years after entry of the plea when counsel's files may have been destroyed and memories have faded is inadequate to meet the burden of proof in a habeas proceeding. (*Alvernaz, supra*, 2 Cal.4th at p. 938.) Moreover, a proponent of evidence, in this case Barera, must use in-court testimony if

16.

possible; yet, Barera did not testify and the People objected to the declaration as evidence. (*People v. Fuentes* (1998) 61 Cal.App.4th 956, 960-961.)

Second, assuming for purposes of argument Barera's statement that Candelaria never informed him of the immigration consequences of entering a plea is true, Barera has made no claim, and no showing, that Candelaria *misadvised* him of the immigration consequences of his plea. When the only advisement given a defendant about immigration consequences is the advisement given by the trial court, there is no ineffective assistance of counsel because there is no prejudice unless a misadvisement by counsel is shown. (*People v. Shokur* (2012) 205 Cal.App.4th 1398, 1407.)

Third, we additionally reject Barera's claim of prejudice because the independent evidence establishes that he would have pled guilty in 1992, regardless of the immigration consequences. The comments made by Barera at the time he entered his plea, specifically that he planned to return to Mexico and did not intend to stay in this country, clearly demonstrate that negative immigration consequences would not have affected his decision. At the time he entered his plea, the record evidence makes clear Barera would have entered the plea, even if he had been informed by counsel of the negative immigration consequences. (*Harris, supra*, 5 Cal.4th at p. 833.)

Lastly, if we were to treat Barera's petition as a statutory motion to vacate as authorized by section 1016.5, the motion would be denied. In *People v. Superior Court* (*Zamudio*) (2000) 23 Cal.4th 183 (*Zamudio*), the California Supreme Court held that for a defendant to prevail on a motion to vacate a judgment pursuant to section 1016.5, the defendant must establish (1) he or she *improperly* was advised of the immigration consequences of the plea as provided by the statute; (2) more than a remote possibility existed that the conviction would have one or more of the specified immigration consequences at the time of the motion; and (3) he or she was prejudiced by the nonadvisement. (*Zamudio,* at pp. 192-193, 201-203, 209-210.)

17.

The section 1016.5 advisements can be given verbally or in writing to a defendant. (*People v. Ramirez* (1999) 71 Cal.App.4th 519, 521-522.)  Here, the advisements were given verbally, they complied with the statute, and Barera acknowledged on the record he understood them.  In *People v. Limon* (2009) 179 Cal.App.4th 1514, 1519, this court rejected a claim of ineffective assistance of counsel and denied a section 1016.5 motion to vacate when the record reflected the defendant had been advised by the trial court of immigration consequences as set forth in the statute.

Barera has failed to meet his burden to establish ineffective assistance as a matter of law because he has not presented any evidence of prejudice from any alleged lack of advisement of immigration consequences by his defense counsel.

### *Consent to Search*

The trial court granted the petition for writ of habeas corpus on the grounds of ineffective assistance of counsel in failing to advise on immigration consequences. Barera also contended defense counsel was ineffective for failing to move to suppress evidence obtained in the 1992 search of his residence, which he now claims was nonconsensual.  Issuing a writ on one ground only is an implicit determination there is a lack of merit in the other grounds asserted.  (*In re Sassounian* (1995) 9 Cal.4th 535, 547.) The trial court's implied finding that counsel was not ineffective for failing to move to suppress evidence obtained in the search was supported by substantial evidence.

The testimony of Lostaunau and Cavazos at the evidentiary hearing established that the illegal drugs were discovered in the course of a consensual search.  The search was conducted after Barera had been advised of his constitutional rights pursuant to *Miranda v. Arizona* and consented to a search.  Barera told his probation officer, in 1992, that he had consented to the search.  The police reports prepared at the time of arrest in 1992 were consistent with Barera's statement to his probation officer and the testimony of Lostaunau and Cavazos at the evidentiary hearing.

18.

The record supports the trial court's implied finding that there was no reasonable grounds for filing a motion to suppress in 1992.  Matters involving trial tactics are matters as to which judicial hindsight ordinarily will not be exercised.  (*In re Garcia* (1977) 67 Cal.App.3d 60, 68.)  In any event, an attorney has no duty to make a futile motion and does not render ineffective assistance of counsel by not doing so.  (See *People v. Anderson* (2001) 25 Cal.4th 543, 587.)

## CONCLUSION

Barera was given great leniency by the plea bargain.  Facing a maximum sentence of 11 years 8 months in state prison, he bargained for probation and county jail time.  It is highly unlikely Barera would have escaped conviction at a trial, and, if convicted, he would have been subject to the same immigration consequences.

Even knowing the deportation and naturalization consequences of his plea as a result of receiving the section 1016.5 advisements, Barera did not question the trial court or his counsel concerning these consequences and did not show concern for them at the change of plea or sentencing hearings.  It is apparent that Barera accepted a plea agreement at an early stage of the proceedings in order to avoid the possibility of over 11 years in prison.

Barera's self-serving declaration to support the habeas petition apparently is nothing more than a case of "buyer's remorse" triggered by changed circumstances many years after the entry of the plea.  Buyer's remorse is insufficient to compel a court to permit withdrawal of a plea.  (*People v. Knight* (1987) 194 Cal.App.3d 337, 344.)  Moreover, a defendant's change of mind, alone, does not constitute good cause for withdrawal of a guilty plea.  (*People v. Huricks* (1995) 32 Cal.App.4th 1201, 1208.)  It also is not grounds for issuing a writ of habeas corpus.

19.

## DISPOSITION

The order granting the petition for writ of habeas corpus is reversed. The petition for writ of habeas corpus is denied.

_____

CORNELL, J.

WE CONCUR:

_____

LEVY, Acting P.J.

_____

GOMES, J.