Filed 7/22/22 P. v. Amaro CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(El Dorado)

----

| | |
|---|---|
| THE PEOPLE, | C091177 |
| Plaintiff and Respondent, | (Super. Ct. No. P18CRF0040) |
| v. | |
| DONALD SOSA AMARO, | |
| Defendant and Appellant. | |

During the trial of defendant Donald Sosa Amaro, Jane Doe testified defendant, her neighbor, began sexually molesting her in his trailer when she was about eight years old.  The jury found defendant guilty of multiple child sex crimes, and the trial court sentenced defendant to a determinate term of eight years and an indeterminate term of 25 years to life in prison.  Defendant appeals.

Defendant principally attacks two of the trial court's evidentiary rulings.  In that regard, defendant sought to introduce evidence at trial that, before Doe accused *him*,

1

defendant had accused Doe's mother's boyfriend, B. M., of committing lewd acts with Doe, which accusation provided Doe's mother, V. B., and B. M. with motive to manipulate Doe to accuse defendant of committing such acts instead. After conducting an analysis pursuant to Evidence Code[1] section 352, the trial court ruled defendant could ask V. B. "sanitized" questions regarding defendant's sexual abuse accusation, and defendant could introduce a "sanitized" version of the accusation during the presentation of his case. Defendant argues the evidentiary rulings constituted an abuse of discretion and violated several of his constitutional rights. We find no merit in defendant's contentions and, because we conclude no error occurred, further find no cumulative error arising out of the trial court's evidentiary rulings.

Defendant also argues the trial court abused its discretion when it denied defendant's motion for a new trial, which motion was based solely on his claim the trial court erred in "sanitizing" the evidence regarding defendant's sexual abuse accusation against B. M. We again disagree and affirm defendant's convictions.

In supplemental briefing, defendant argues his case should be remanded for resentencing in light of recent legislative enactments that ameliorate punishment, including Senate Bill No. 567 (2021-2022 Reg. Sess.). We agree defendant is entitled to resentencing in light of Senate Bill No. 567. Accordingly, we vacate the sentence and remand for resentencing.

FACTUAL AND PROCEDURAL BACKGROUND

A

*The Pertinent Trial Testimony, Rulings, And History*

Born in mid-2008, Doe lived in a trailer park with, among others, her mother and B. M. (whom she referred to as her "dad" during trial). Defendant lived in the same

---

[1] Further undesignated statutory references are to the Evidence Code.

trailer park and sometimes worked with B. M. on maintenance projects at the trailer park. On occasion, beginning when she was around seven or eight years old, Doe went to defendant's trailer to help him with household chores.

On the morning of July 19, 2017, defendant approached C. G., who also lived in the trailer park, and told him defendant "was . . . concerned . . . that [C. G.] was gonna get in trouble because of the little girls." C. G. thought defendant was talking about C. G.'s daughters, but defendant clarified he was talking about Doe. C. G. got upset, told defendant to "wait," and brought his wife S. P. over to the conversation. In S. P.'s presence, defendant told C. G. that he meant some men "like to play with little girls and little boys." C. G. told defendant to "stay away" from his family, and S. P. immediately went home to speak with her daughters. S. P. considered defendant's statement to be "kind of a warning." Considering defendant "was super friendly" with Doe, S. P. then spoke to V. B. and B. M. about defendant's comments. V. B. and B. M. expressed anger at the comments, and S. P. "told them that it should be handled the right way and to call the authorities, and that if they couldn't make that call at that time that [S. P.] would be willing to . . . and so that's what [S. P.] did."

That afternoon, in the presence of several others, including a family friend and neighbor, Doe told her mother that defendant had touched her between her legs and had tried to "hump" her. The neighbor testified Doe revealed defendant's conduct after V. B. asked Doe whether defendant had done anything to her. Consistent with the neighbor's testimony, El Dorado County Deputy Sheriff Brandon Hartfield testified that, when he responded to the trailer park on July 19, 2017, V. B. told him that she had asked Doe if defendant had ever "done anything inappropriate to her."

In recorded interviews that occurred in January 2018 and March 2018, and which were played for the jury at trial, Doe explained how defendant sexually abused her in his trailer on multiple occasions. Doe further testified to those events at trial.

V. B. testified Doe's statement on July 19, 2017, to her and others regarding defendant's actions was unprompted. When the prosecutor asked whether "anything preceded that disclosure by" Doe, V. B. replied: "No, actually it -- it was -- I'm trying to remember back then. Tried to forget about it." V. B. later testified she wanted to ask Doe if defendant "had ever done anything to her" when, approximately a month before Doe's revelation, defendant asked V. B. and B. M. what they would do "if [they] ever heard of anybody touching" Doe.

V. B. could not recall telling the police that, on the same day Doe disclosed defendant's conduct, C. G. and S. P. told her about a conversation they had had with defendant. She further denied "that there was a confrontation with [defendant] and [V. B.] and some of the other neighbors in the morning" of the day Doe disclosed the sexual abuse.

During V. B.'s testimony, defense counsel asked for a sidebar to discuss the existence of a recording of V. B.'s interview with the police, in which she indicated that *before* she spoke to Doe about defendant, a neighbor informed B. M. that defendant told the neighbor he saw Doe performing oral sex on B. M. Defense counsel argued he wanted to "give the jury context" regarding the "questioning . . . about whether or not [defendant] . . . did anything to" Doe. Defense counsel submitted the evidence undermined V. B.'s reliability and credibility because she "testified that it was a spontaneous statement." The trial court agreed "[t]he fact that she said -- to [an officer] it was not spontaneous, that can be used to impeach." But the trial court queried the necessity of "get[ting] into" anything "[b]eyond that."

The trial court continued: "So you believe that the jury should know that [defendant] made a statement about [B. M.] . . . sexually assaulting the alleged victim in this case to show that [V. B.] was angry?" Defense counsel responded: "To show that she was angry. To show that she had a motive to lie. To show that she had motive to

4

make up a story about what actually occurred." In defense counsel's view it did not matter whether the accusation against B. M. was true.

After the prosecutor objected to introduction of the evidence under section 352, the trial court ruled: "If there is any probative value to show [V. B.] was angry, upset, what have you, it's pretty minimal. To drop a bomb that she had heard information that [B. M.] . . . was molesting her daughter, that's just explosive. That's tremendously prejudicial. [¶] You may not be trying to get it in for the truth of the matter asserted. . . . But that [*sic*] jury hears it, [it] could take and run with it and take it for the truth of the matter asserted no matter what I tell [it], and the probative value is significantly outweighed by the prejudicial effect. [¶] If you want to try to sanitize it I would perhaps consider that, [']did you get some information that caused you to be upset or angry.['] That's up to you. Frankly this is something that should have been handled pretrial as opposed to in it . . . . But I'm not going to allow the evidence in as you've indicated on [section] 352 grounds. [¶] I've done a very careful analysis and a very thorough one and it's my conclusion that the probative value is minimal. The prejudicial effect is maximum."

The trial court further added it did "not feel that the state of mind of the questioner, that is the current witness, [V. B.], is that significant. Whether she's happy, sad, upset . . . it makes no difference. What matters is what the victim, the alleged victim said. And there's no information whatsoever that this alleged incident had any effect on her . . . ."

Defense counsel responded he was "not going to request a sanitized [*sic*]. If the issue comes up at a later time we can address it." After resuming V. B.'s cross-examination, defense counsel asked V. B. whether she told a police officer that she asked Doe whether defendant had ever touched her in an inappropriate way. V. B. replied she guessed she did because she "was distraught and very, very upset."

5

After the prosecution rested, defense counsel asked the trial court to "address th[e] issue" that the trial court had "reserved ruling on." Invoking defendant's rights to "present a defense, right to a fair trial" and "6th Amendment right of confrontation," counsel explained: "The facts that . . . we anticipate we will elicit if the Court allows is that on July 19, 2017, in the morning, [defendant] told a neighbor, . . . that he saw [B. M.] molest" Doe. "Shortly after [that neighbor] told [B. M.] about [defendant's] accusation, [B. M.] told [V. B.] about the accusation. The accusations by [defendant] caused [B. M.] and [V. B.] to become angered. [¶] Some time after that [defendant] came home and was confronted about the accusation that he made against [B. M.] And the people that were involved in that confrontation included [B. M.], [V. B.], and [C. G.] The latter two testified during this trial.

"After the confrontation and because of the accusations [defendant] made, [B. M.] and -- [V. B.] alleged that [V. B.] went to ask [Doe] if [defendant] had ever done anything to her. And later that night [defendant] was accused of molesting [Doe]. [¶] And it's our theory . . . that [defendant] is being falsely accused because of the accusations [he] made against [B. M.]; specifically . . . [B. M.] and [V. B.] became angered enough that [they] either coach[ed] [Doe] or . . . indirectly influence[d] her to see [defendant] as the enemy and make false allegations. [¶] It should be admitted. . . . It's not being introduced for the truth of the matter asserted."

The prosecution urged the trial court to not alter its original section 352 ruling. The trial court asked defense counsel how he wanted to present the evidence, and whether he planned to call the neighbor to whom defendant disclosed the accusation or B. M. to testify. Defense counsel replied: "The defense has been put in a position where [defendant] has to testify and he will testify."

After further discussion, the trial court observed: "There's no link between [defendant's] observation and the alleged victim's statement. There may have been the desire to influence her, but you presented no evidence that there's been any such thing.

6

[¶] I will say that in an abundance of caution to make sure that the Court of Appeals [*sic*] doesn't disagree with me I'll let you sanitize it. I don't think that the act itself is critical. It is to you probably because you want to get the emotional impact it will have on a jury. But to a true fact finder just the fact that [defendant] saw [B. M.] doing something illegal, now why wouldn't that work?"

Defense counsel insisted that "to determine the reliability of [Doe's] statements [the jurors] need[ed] context of how that came out. And it's extremely relevant that her father was accused of abusing her and that he had a stake in influencing her to say something else occurred." In defense counsel's view, the evidence tended to show V. B.'s and B. M.'s shared motive "to beat [defendant] to the punch," by being "the first one to go to the authorities" and thereby making it more likely they would be believed.

Responding to the trial court's query, the prosecutor represented he understood that the neighbor mentioned by defense counsel told B. M. about defendant's accusation the same day but before Doe's revelation to V. B.

The trial court ruled: "The charge made by the defendant is explosive, so I do find, as the defense wants to introduce it, it is subject to a [section] 352 analysis which prevents [defendant] from introducing the evidence as . . . plan[ned]; however, I will allow it sanitized. [¶] I'm not saying it has no relevance. I think it's . . . speculative."

After the prosecutor asked the trial court to clarify its ruling, the trial court said it would allow the defense to call any witness deemed "appropriate to get this proven to be a motive to put the blame on [defendant] instead of [B. M.]. The only thing is it won't say that there was an act of oral copulation . . . . He is merely going to be able to state that he saw something [B. M.] was doing that was . . . illegal." A moment later, the trial court expanded the permissible verbiage to "inappropriate and illegal." The prosecutor responded " 'inappropriate' in the context of this case . . . is fraught with more speculation than it is relevant." The trial court responded it was "left with [several] options; to exclude it completely, to allow it completely, or to allow [the defense] to try

7

to introduce motive evidence, which is relevant. [¶] As I indicated before, I think the prejudicial effect . . . substantially outweighs the probative value, but nevertheless it exists."

Defendant testified that around 1:00 a.m. on the day the police were called regarding Doe, he saw B. M. "do something illegal and inappropriate" that left defendant "heart broken and totally, totally confused . . . . I couldn't believe what I [had] seen." At 7:00 a.m., defendant told a neighbor what he had seen, and then left in his car to get food. When defendant returned to the trailer park, "there was . . . an altercation" and V. B. "wanted to hit [defendant] with her fists." Deputy Sheriff Hartfield testified that, when he responded to the trailer park on July 19, 2017, B. M. told him that defendant "spread[ ] rumors about" him doing something illegal and inappropriate.

Defendant further testified he told law enforcement in January 2018 about B. M.'s actions that morning in July 2017. "[I]t was bothering [him] so much [he] told" an officer that he was interacting with on a matter unrelated to any issues at trial.

During cross-examination, defendant admitted he had previously accused other neighbors besides B. M. of doing inappropriate and illegal acts. He further agreed that he had hugged Doe: "Same thing I do with my girls. Give little hugs goodbye." Defendant also agreed that Doe had been inside his trailer. When pressed by the prosecutor as to why he failed to report B. M.'s actions earlier if it bothered him so much, defendant replied he "had no proof," and January 2018 was the "first time [he] was face to face with a law enforcement officer."

After defendant testified, the trial court said it wanted to state something on the record "in case this matter is ever reviewed by an appellate court." After the trial court explained the procedural background concerning the parties' efforts to obtain a ruling from the trial court on the admissibility of defendant's accusation against B. M., it said, "[w]e did this on the fly, and there's really no reason why we should have." "[T]he Court had no option but to conclude that the probative value was minimal because it required

8

too much speculation. [The] [p]rejudicial effect of the information that was sought to be elicited was pretty clear."

One key area of disagreement highlighted by the parties' closing statements was the issue of what precipitated V. B.'s question to Doe whether defendant touched her inappropriately. The prosecutor argued it was the morning conversation between defendant, C. G., and S. P., wherein defendant said some men "like to play with little girls and little boys." Defense counsel argued it was a conversation that morning between B. M. and the neighbor who heard defendant's accusation that B. M. did something illegal and inappropriate hours before.

Defense counsel continued: "[B. M.] . . . had a motive to unduly influence, persuade and/or manipulate" Doe "into making false allegations about [defendant]. Why is this? [¶] [Defendant] was alleging that he witnessed [B. M.] . . . do an illegal and inappropriate act. It would be less likely that law enforcement would believe [defendant's] allegations against [B. M.] if [B. M.] beat [defendant] to the punch and alleged that [defendant] . . . had been molesting" Doe. Defense counsel posited: "So did [Doe's] parents threaten that she would be taken away by [child protective services] if she didn't follow through with the allegations? This is whether or not threats and/or bribes potentially influenced her disclosure. We don't know. We don't know because that wasn't explored."

The jury ultimately found defendant guilty of committing multiple sex crimes against Doe.

B

*The New Trial Motion*

After the jury's verdicts, defendant filed a new trial motion, contending the trial court "erred in a decision of a question of law that arose during . . . trial" -- referring to the trial court's section 352 ruling. Defendant argued, inter alia, that the "sanitized" evidence the trial court permitted defendant to introduce regarding B. M.'s motive to

9

influence Doe's testimony "severely hampered" "the probative value of th[e] motive evidence." Defendant asserted that a posttrial interview of a juror "confirmed that. When interviewed, Juror number ten stated, 'Amaro only said that he saw something "illegal and immoral" going on. Like what? Smoking marijuana? I mean, what is illegal and immoral?' "

The trial court denied the new trial motion, explaining why its prior section 352 ruling was correct: "It's difficult to imagine what kind of evidence would be more inflammatory than that proposed to be introduced. [¶] Second, we don't know if this completely uncorroborated and self-serving testimony was true or not. [¶] And third, the People would have had to challenge that testimony by calling [B. M.] to deny the allegations against him. The People would [have] had the opportunity to call character witnesses regarding [B. M.]. [The] People would have had to explore the defendant's motives for making these accusations . . . .

"All of this would [have] resulted in a side trial of [B. M.] which would [have] consumed significant time, [and] would [have] most likely confused the jury as to the significance and relevance of this evidence against [B. M.].

"[¶] . . . [¶]

"Again, the only reason to introduce this evidence was to let the jury know [B. M.] and his friends were the moving force behind this prosecution. But the inference the defendant wanted the jury to make was actually more in the line of speculation as opposed to legitimate inference.

"To support it the defendant wanted the jury to fill in the gaps in their theory. They could not establish that [B. M.] or anyone else forced Jane Doe to adopt these allegedly false accusations against the defendant. Put it simply, there was no bridge connecting the defendant's alleged observation of [B. M.] molesting Jane Doe and Jane Doe's allegedly false accusations against the defendant. [¶] The defense offered no

10

evidence to connect the defendant's alleged observations of [B. M.] molesting Jane Doe and Jane Doe then falsely accusing the defendant instead of [B. M.] . . . .

"Considering all of the above, the Court determined that the questionable probative value of the defendant's proposed testimony to be substantially outweighed by: 1) probability that its admission would necessitate an undue consumption of time; 2) create substantial danger of undue prejudice; and 3) create substantial danger of confusing and/or misleading the jury."

The trial court further explained it "nevertheless allowed the defense to sanitize [the] proposed testimony," by permitting "defendant to testify that he saw [B. M.] doing something illegal and inappropriate. This . . . testimony still allowed the defendant to ask the jury to speculate that because he saw [B. M.] commit an illegal and inappropriate act, [B. M.] had the motive to silence the defendant. [¶] For the reasons I've stated when the Court made its ruling at trial earlier this year it was convinced it was right. The Court still feels that it exercised [section] 352 in a legitimate and appropriate manner, so respectfully the motion for new trial is denied."

## DISCUSSION

### I

### *The Trial Court Properly "Sanitized" The Evidence*
### *Regarding Defendant's Sexual Abuse Allegation Against B. M.*

Defendant argues "the court's error when it sanitized the defense evidence under Evidence Code section 352 constituted an abuse of discretion that violated [his] due process rights to a fair trial and to present a defense." We disagree the trial court abused its discretion.

Under section 352, "[t]he court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." " 'The "prejudice" referred

11

to in Evidence Code section 352 applies to evidence which uniquely tends to evoke an emotional bias against [a party] . . . . In applying section 352, "prejudicial" is not synonymous with "damaging." ' " (*People v. Karis* (1988) 46 Cal.3d 612, 638.)

"Where, as here, a discretionary power is statutorily vested in the trial court, its exercise of that discretion 'must not be disturbed on appeal *except* on a showing that the court exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice.' " (*People v. Rodrigues* (1994) 8 Cal.4th 1060, 1124-1125.) Even if "another court might have" reached a different conclusion after conducting a section 352 analysis, "[t]hat . . . reveals nothing more than that a reasonable difference of opinion was possible. Certainly, it does not establish that [a trial] court [has] 'exceed[ed] the bounds of reason.' " (*People v. Clair* (1992) 2 Cal.4th 629, 655.)

The trial court explained its section 352 reasoning as to defendant's sexual abuse accusation against B. M. on multiple occasions, providing slightly different versions of the same overarching analysis. We think the trial court's ruling can fairly be summarized as follows: defendant's accusation, while relevant, was speculative and so "explosive" that it had to be sanitized due to the dangers of (1) undue consumption of time (for a side trial on B. M.'s character), (2) undue prejudice to the prosecution's case, and (3) confusing or misleading the jury.

We agree with the trial court that evidence V. B. and B. M. had an ulterior motive to accuse defendant of molesting Doe and were potentially "the moving force behind th[e] prosecution" was relevant and had probative value. We also agree with the trial court that defendant's evidence was of *limited* probative value, as there was no evidentiary "bridge connecting the defendant's alleged observation of [B. M.] molesting . . . Doe and . . . Doe's allegedly false accusations against the defendant."

The trial court's determination that admission of defendant's evidence would have created a substantial danger of undue prejudice was also reasonable. The trial court

12

reasonably determined that admission of the evidence created the potential for unduly prejudicing the jury against the prosecution by angering the jurors that (i) the prosecution was going after the wrong person (defendant, rather than B. M.), (ii) the prosecution was only *selectively* prosecuting Doe's sex abusers, and/or (iii) Doe's mother had failed to protect Doe from multiple child sexual predators -- matters unrelated to the issue on which defendant's evidence was admissible (i.e., V. B.'s and B. M.'s motive to lie). (Cf. *People v. Cudjo* (1993) 6 Cal.4th 585, 610 [there was no "danger of 'undue prejudice' to the prosecution" under § 352, because "[t]he evidence was not likely 'to arouse the emotions of the jurors' or 'to be used in some manner unrelated to the issue on which it was admissible' "].)

The trial court also reasonably determined that introduction of the topic of oral sex between B. M. and Doe would have created a substantial risk of confusing and misleading the jury. Though defendant did not seek to establish the truth of his accusation, the trial court was understandably skeptical the jurors would have been able to maintain that distinction in their minds, worrying "they could . . . run with it and take it for the truth of the matter asserted no matter what I tell them." (See *People v. Kovacich* (2011) 201 Cal.App.4th 863, 891-892 [no abuse of discretion under § 352 when a trial court excludes evidence after "conclud[ing] that the jury will be unable to follow" an instruction not to consider a statement itself as true, because it is not admitted for its truth].)

Given the trial court's reasonable determinations of the limited probative value of the evidence, and its potential to unduly prejudice the prosecution and confuse or mislead the jury, the trial court's section 352 ruling did not constitute an abuse of discretion.[2] In other words, we find no basis for concluding the trial court acted in an arbitrary,

---

[2] Because defendant does not challenge the trial court's undue consumption of time finding pertinent to the section 352 analysis, we do not address it.

capricious or patently absurd manner that resulted in a manifest miscarriage of justice. (*People v. Rodrigues, supra*, 8 Cal.4th at pp. 1124-1125.)

None of the cases cited by defendant lead us to a contrary conclusion. Defendant relies on three cases as examples of when courts have admitted "sexually suggestive or gruesome photographic evidence" under section 352, citing *People v. Navarette* (2003) 30 Cal.4th 458, 496, *People v. Memro* (1995) 11 Cal.4th 786, 866-867, and *People v. Holford* (2012) 203 Cal.App.4th 155, 170-174, 177-178. Cases in which trial courts have not abused their discretion to *admit* evidence fail to provide any basis for finding the trial court abused its discretion *under the unanalogous facts in this case* to *exclude* evidence.

Defendant further invokes *Old Chief v. United States* (1997) 519 U.S. 172 for the proposition he had a right to "present[] concrete evidence" that he saw Doe orally copulating B. M., but the trial court's ruling forced him "rely on" the " 'abstract premise' . . . that [he] witnessed something 'illegal' and 'inappropriate.' " *Old Chief* does not assist defendant.

"In *Old Chief*, the United States Supreme Court held that a criminal defendant could stipulate to the existence of a felony conviction when charged with the federal equivalent of felon in possession of a firearm." (*People v. Holford, supra*, 203 Cal.App.4th at p. 176, fn. omitted.) The United States Supreme Court "discussed the general federal rule regarding stipulations and the policy underlying that rule . . . . As a general matter, 'a criminal defendant may not stipulate or admit his way out of the full evidentiary force of the case as the Government chooses to present it.' (*Old Chief, supra*, 519 U.S. at pp. 186-187.) The court reasoned 'a piece of evidence may address any number of separate elements, striking hard just because it shows so much at once . . . . Evidence thus has force beyond any linear scheme of reasoning, and as its pieces come together a narrative gains momentum, with power not only to support conclusions but to sustain the willingness of jurors to draw the inferences, whatever they may be, necessary to reach an honest verdict. This persuasive power of the concrete and particular is often

essential to the capacity of jurors to satisfy the obligations that the law places on them. . . .' (*Id.* at p. 178.)

"The high court went on to note the 'accepted rule that the prosecution is entitled to prove its case free from any defendant's option to stipulate the evidence away rests on good sense. A syllogism is not a story, and a naked proposition in a courtroom may be no match for the robust evidence that would be used to prove it. People who hear a story interrupted by gaps of abstraction may be puzzled at the missing chapters, and jurors asked to rest a momentous decision on the story's truth can feel put upon at being asked to take responsibility knowing that more could be said than they have heard. A convincing tale can be told with economy, but when economy becomes a break in the natural sequence of narrative evidence, an assurance that the missing link is really there is never more than second best.' " (*People v. Holford, supra*, 203 Cal.App.4th at p. 179, italics omitted.)

*Old Chief*'s concern with the prosecution's ability "to prove its case free from" a defendant's ability to "stipulate the evidence away" simply has no application under the facts of this case. Even if the concern applies with equal force to a defendant's right to present a defense, this case did not involve a stipulation. Rather, defendant challenges the trial court's *evidentiary ruling* that the specific nature of B. M.'s alleged conduct had limited probative value in comparison to the potential to unduly prejudice the prosecution and confuse or mislead the jury. *Old Chief* has no bearing on whether the trial court erred in making that ruling.

Defendant also contends the "sanitized version" of his evidence "was itself more prejudicial than probative because it encouraged the jury to . . . speculate[] about the nature of" B. M.'s conduct that defendant saw, thereby "undermin[ing] the defense inference," as jurors might have "speculate[d] [that] [defendant] . . . witnessed some

15

victimless, benign crime."[3] The problem with defendant's argument is that the trial court's section 352 ruling required it to balance competing considerations, including defendant's right to present a defense, and as we have already explained, the trial court did not abuse its discretion in striking that balance. (See *People v. Massey* (1987) 192 Cal.App.3d 819, 825 [rejecting the defendant's argument that sanitization of his prior convictions was improper "notwithstanding the possibility of jury speculation," because the trial court was faced with multiple imperfect solutions].)

Finally, we note the constitutional right to present a defense "does not encompass the ability to present evidence unfettered by evidentiary rules. [Citation.] Indeed, application of the ordinary rules of evidence does not impermissibly infringe on a defendant's right to present a defense." (*People v. Thomas* (2021) 63 Cal.App.5th 612, 627.) Accordingly, the trial court did not constitutionally err when -- pursuant to section 352 -- it sanitized defendant's accusation against B. M. during the defense's case.

For the foregoing reasons, we find no basis for concluding the trial court erred in "sanitizing" the evidence regarding defendant's sexual abuse accusation against B. M.

---

[3] For support of this contention, defendant asserts that "a juror told defense counsel they speculated what was meant by 'illegal' and 'immoral' and questioned whether [B. M.] had been smoking marijuana." This statement by a juror appears in the memoranda of points and authorities in support of the new trial motion, but *not* in any declaration filed in support of the motion. Accordingly, the statement is "not evidence and [could not have] provide[d] the basis for the granting of the motion," and cannot be the basis of a factual assertion on appeal. (*Smith, Smith & Kring v. Superior Court* (1997) 60 Cal.App.4th 573, 577-578.)

16

## II

*The Trial Court Properly Precluded The Questions To V. B.*

*Regarding Defendant's Sexual Abuse Accusation Against B. M.*

Defendant asserts the trial court constitutionally erred by applying section 352 to preclude the defense from cross-examining V. B. about defendant's sexual abuse accusation against B. M.[4] We disagree.

"The trial court has broad discretion to exclude impeachment evidence under Evidence Code section 352. [Citation.] Although wide latitude should be given to cross-examination designed to test the credibility of a prosecution witness, the court retains discretion to exclude collateral matters." (*People v. Hill* (1995) 34 Cal.App.4th 727, 738.)

In *Hill*, the trial court limited the defendant's cross-examination of a prosecution witness, preventing him from "elicit[ing] testimony concerning the nature of . . . crimes committed by" the witness's boyfriend, including the "rape and sodomy of a 15-year-old girl" in the witness's presence. The trial court permitted the defendant to question the witness about threats she made to the victim (for accusing the witness's boyfriend of rape), but sanitized the matter by limiting defendant's questioning of the witness to "threats to protect her boyfriend from a generic accusation." On appeal, the defendant argued "he was improperly limited in his cross-examination" of the witness, because "the excluded evidence, that [the witness] was willing to threaten to kill in order to protect her boyfriend from the serious charge of *rape*, [was] qualitatively different from the evidence

---

**4**    We disagree with the People's contention defendant "forfeited his claims that his rights to a fair trial, confrontation, and cross-examine witnesses were infringed." Defendant invoked in the trial court his rights to a fair trial and to confront witnesses. And the right of confrontation includes the right to cross-examine witnesses. (*People v. Fuentes* (1998) 61 Cal.App.4th 956, 963-964.)

17

actually presented, that [the witness] made threats to protect her boyfriend from a generic accusation." (*People v. Hill, supra*, 34 Cal.App.4th at p. 738.)

The appellate court rejected the argument, explaining "[d]efendant elicited testimony from [the witness] concerning her presence during an (unspecified) criminal incident involving her new boyfriend . . . ; concerning her threats to the witnesses to that criminal incident; concerning her statements to the police about the incident. The exclusion of the nature or details of the crimes committed by [the witness's boyfriend] did not affect defendant's ability to show that [the witness] had a motive for cooperating with police and, therefore, for testifying against defendant." (*People v. Hill, supra*, 34 Cal.App.4th at pp. 738-739.)

Here, the trial court's application of section 352 did not implicate defendant's constitutional rights. We conclude the exclusion of the details of defendant's accusation against B. M. did not fatally undermine defendant's ability to show that V. B. had an ulterior motive to testify against defendant and to manipulate Doe to accuse defendant.

Moreover, for the same reasons already addressed as to the trial court's section 352 analysis regarding defendant's sexual assault accusation against B. M., we fail to see how the trial court abused its discretion in limiting the scope of V. B.'s cross-examination as to that accusation. While defendant briefly states that "questioning [V. B.] about [defendant's] accusation against [B. M.] would not have unduly consumed time," he spends no time addressing the trial court's concerns in that regard. We thus find no basis for concluding the trial court abused its discretion in precluding specific questions regarding defendant's sexual abuse accusation against B. M. during V. B.'s cross-examination.

## III

### *The Trial Court Did Not Err In Denying The New Trial Motion*

A court may grant a new trial when it "has erred in the decision of any question of law arising during the course of the trial . . . ." (Pen. Code, § 1181, subd. (5).) A trial

court " 'has broad discretion in ruling on a motion for a new trial, and there is a strong presumption that it properly exercised that discretion.' " (*People v. Fuiava* (2012) 53 Cal.4th 622, 730.)

Defendant asserts, "[b]ecause the trial court erred when it sanitized the defense evidence under Evidence Code section 352, the trial court subsequently abused its discretion when it denied [his] new trial motion." As explained *ante*, however, we disagree the trial court erred under section 352. Given we have already explained why we disagree with defendant's claim of error, we do not reiterate the analysis here.

IV

*There Was No Cumulative Error*

Defendant argues the cumulative effect of the errors requires reversal. "Under the 'cumulative error' doctrine, errors that are individually harmless may nevertheless have a cumulative effect that is prejudicial." (*In re Avena* (1996) 12 Cal.4th 694, 772, fn. 32.) Because we have concluded defendant has failed to show any error occurred, there was no cumulative error.

V

*Remand For Resentencing*

In supplemental briefing, defendant contends his sentence should be reversed and the matter remanded for resentencing in light of recent amendments to Penal Code section 1170, subdivision (b), citing Senate Bill No. 567 (2021-2022 Reg. Sess.) (Stats. 2021, ch. 731, § 1.3) and Assembly Bill No. 124 (2021-2022 Reg. Sess.) (Stats. 2021, ch. 695, § 5). The People concede the amendments to Penal Code section 1170, subdivision (b), effective January 1, 2022, apply retroactively to defendant under *In re Estrada* (1965) 63 Cal.2d 740, 742. The People argue, however, remand for resentencing is unnecessary in light of the evidentiary record.

We agree the amendments to Penal Code section 1170, subdivision (b) under Senate Bill No. 567 apply retroactively to defendant and conclude remand for

resentencing is appropriate in that regard. Because we are remanding for resentencing, we need not and do not address defendant's alternative argument that resentencing is appropriate because he suffered childhood trauma, under newly added Penal Code section 1170, subdivision (b)(6). (See *People v. Buycks* (2018) 5 Cal.5th 857, 893 ["when part of a sentence is stricken on review, on remand for resentencing 'a full resentencing as to all counts is appropriate, so the trial court can exercise its sentencing discretion in light of the changed circumstances' "].)

A

*Additional Background*

Relying in part on a presentence report by a probation officer (which report was based in part on police reports), the trial court imposed an aggravated term for defendant's conviction of committing a lewd act upon a child under the age of 14.

The presentence report noted one circumstance in mitigation (that defendant had no prior record), and three circumstances in aggravation: Doe was particularly vulnerable; the manner in which the offenses were committed indicated planning, sophistication, or professionalism; and defendant took advantage of a position of trust or confidence to commit his offenses.

Explaining its decision to impose the aggravated term, the trial court said, simply: "I find the aggravated factors outweigh the mitigating factors."

B

*Remand For Resentencing Is Appropriate*

Senate Bill No. 567 amended Penal Code section 1170, effective January 1, 2022, to, among other things, provide a trial court "may impose a sentence exceeding the middle term only when there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term, and *the facts underlying those circumstances have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial.*

20

Except where evidence supporting an aggravating circumstance is admissible to prove or defend against the charged offense or enhancement at trial, or it is otherwise authorized by law, upon request of a defendant, trial on the circumstances in aggravation alleged in the indictment or information shall be bifurcated from the trial of charges and enhancements. The jury shall not be informed of the bifurcated allegations until there has been a conviction of a felony offense." (Pen. Code, § 1170, subd. (b)(2), italics added.)

The parties correctly agree the amendment qualifies as an ameliorative change to the sentencing laws and therefore applies to any judgment that, like defendant's judgment, was not final on the new legislation's operative date. (See *People v. Superior Court (Lara)* (2018) 4 Cal.5th 299, 306-308; *People v. Frahs* (2020) 9 Cal.5th 618, 624-625.)

Invoking *Sandoval*, the People argue resentencing is not required here, because "there was undisputed evidence of each of the aggravating circumstances that the trial court relied upon such that a jury would have found the circumstance to be true beyond a reasonable doubt." (Citing *People v. Sandoval* (2007) 41 Cal.4th 825, 839 ["if a reviewing court concludes, beyond a reasonable doubt, that the jury, applying the beyond-a-reasonable-doubt standard, unquestionably would have found true at least a single aggravating circumstance had it been submitted to the jury, the Sixth Amendment error properly may be found harmless"].)

But, even if we were to agree with the People's characterization of the evidence in the record that supports the presentence report's discussion of aggravating circumstances, we find persuasive defendant's observation that *Sandoval* actually counsels in favor of resentencing. Our Supreme Court cautioned that a "reviewing court cannot necessarily assume that the record reflects all of the evidence that *would have been presented had aggravating circumstances been submitted to the jury*," because "the aggravating circumstances found by the trial court . . . were not part of the charge and were not directly at issue in the trial," and "[d]efendant thus did not necessarily have reason—or

21

the opportunity—during trial to challenge the evidence supporting these aggravating circumstances unless such a challenge also would have tended to undermine proof of an element of an alleged offense." (*People v. Sandoval, supra*, 41 Cal.4th at p. 839, italics added.)

Here, defendant did not necessarily have reason during his trial to challenge the evidence the People argue supports imposition of the aggravated term. Accordingly, this matter must be remanded for resentencing.

## DISPOSITION

The convictions are affirmed. The sentence is vacated, and the matter is remanded for resentencing.

/s/
Robie, Acting P. J.

We concur:

/s/
Duarte, J.

/s/
Hoch, J.